1998 ND 66

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Michael Todd SERR, Defendant and Appellee.**

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Karmon Michelle KOBLE, a/k/a Karmon Utter, Defendant and Appellee.**

**Criminal Nos. 970282, 970283.**

Supreme Court of North Dakota.

March 26, 1998.

Rehearing Denied May 20, 1998.

Ladd R. Erickson, Assistant State's Attorney, for plaintiff and appellant.

Robert W. Martin, Bismarck, for Michael Todd Serr, defendant and appellee.

Ralph A. Vinje, Vinje Law Firm, Bismarck, for Karmon Michelle Koble, defendant and appellee.

SANDSTROM, Justice.

[¶ 1] The State appeals an order dismissing charges of conspiracy to deliver a controlled substance against Karmon Koble and Michael Serr. We conclude we have jurisdiction to hear this appeal, and because probable cause does not exist to bind the defendants over for trial, we affirm.

## I

[¶ 2] Karmon Koble and Michael Serr were each charged by criminal complaint with two counts of possession of a controlled substance with intent to deliver and one count of conspiracy to deliver a controlled substance. A preliminary hearing was held, and the trial court found probable cause to bind Serr and Koble over on the possession with intent to deliver charges. The trial court reserved ruling on the conspiracy charge so it could "review case law." After receiving briefs addressing the conspiracy charges, the trial court issued its order and summarized the evidence:

> "Law enforcement authorities received anonymous information in April 1997 that defendant Koble was engaged in selling large quantities of controlled substances. In April, Jamie Moe was heard during the course of a controlled substance transaction saying that he usually procures illegal drugs from Koble for further sale. In May 1997, a confidential informant told law enforcement authorities that Moe was getting controlled substances from Koble. On June 5, 1997, a search warrant was execut-

ed at a residence apparently shared by Koble and defendant Serr. Found, among other things, were large amounts of controlled substances, drug paraphernalia, weighing devices, packaging materials, 'owe sheets,' and $4000 in cash. While officers were engaged in executing the search warrant, a person showed up with a vial that was empty except for a small amount of white powder, some pieces of tin foil, and $512 in cash. The witness [a detective with the Metro Area Narcotics Task Force] opined that the person was there to refill his vial with controlled substances and to pay [sic] the controlled substances with the cash."

(Footnote omitted). The trial court concluded, however, "[t]here is no evidence the defendants agreed with anyone to commit the offense of delivery of a controlled substance." The trial court also concluded possession of controlled substances "without other evidence" does not meet the overt act requirement. The trial court concluded probable cause was lacking to bind Serr and Koble over for trial on the conspiracy charges.

[¶ 3] The State appeals from the September 4, 1997, order. The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06(1). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 29–28–07(1). The appeals are timely under N.D.R.App.P. 4(b)(2).

## II

[¶ 4] Koble argues this Court is without jurisdiction to hear the State's appeal. In *Walker v. Schneider*, 477 N.W.2d 167, 175 n. 8 (N.D.1991), this Court explained:

> "[T]he State is expressly authorized to appeal from an order dismissing a criminal complaint. NDCC 29–28–07(1); *State v. Swanson*, 407 N.W.2d 204 (N.D.1987); *State v. Hanson*, 252 N.W.2d 872 (N.D. 1977). Thus, the State is not precluded from appealing from a district court's dismissal of a complaint on review of a magistrate's adverse determination on probable cause."

Koble points out this case was decided prior to court unification, and argues:

"It could be determined that since there no longer is a county court, that the magistrate's adverse ruling could be reviewed by another district court judge, or it could indicate that a Writ of Certiorari to the Supreme Court is appropriate, however, there does not appear to be any vehicle in the Century Code for an appeal by the State of an adverse ruling in a preliminary hearing."

[¶ 5] N.D.R.Crim.P. 5.1 was amended effective January 1, 1995, to reflect the elimination of county courts. The September 23–24, 1993, minutes of the Joint Procedure Committee explain the committee considered "whether a prosecutor should be allowed to obtain review by a different district court judge of a district court order discharging a defendant after a preliminary examination." The committee minutes state the committee chose "to eliminate district court review of an order discharging the defendant."

[¶ 6] The minutes also explain "[t]he Committee questioned whether a prosecutor would have the right to appeal an order discharging the defendant to the Supreme Court if review by the district court is abolished." The committee did not, however, answer this question.

[¶ 7] While court unification eliminated the county courts, N.D.C.C. § 29–28–07(1), as applied in *Walker*, has not been amended. Under N.D.C.C. § 29–28–07(1), the State may appeal from "[a]n order quashing an information or indictment or any count thereof." This Court has " 'repeatedly held that orders dismissing complaints are appealable under subsection 1 of Section 29–28–07, N.D.C.C.' " *State v. Swanson*, 407 N.W.2d 204, 205 (N.D.1987) (quoting *State v. Hanson*, 252 N.W.2d 872, 873 (N.D.1977)). We therefore have jurisdiction over this appeal.

### III

[¶ 8] The State asks this Court to reverse the district court's order dismissing charges of conspiracy to deliver a controlled substance against Serr and Koble.

### A

[¶ 9] "On appeal, we will not reverse a trial court's findings of fact in preliminary proceedings in a criminal case if 'after conflicts in testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence.' " *State v. Erbele*, 554 N.W.2d 448, 450 (N.D.1996) (citation omitted). Whether the facts found by the trial court reach the level of probable cause, however, is a question of law, fully reviewable on appeal. *E.g., Wheeling v. Director of North Dakota Dep't of Transp.*, 1997 ND 193, ¶ 5, 569 N.W.2d 273.

### B

[¶ 10] Under N.D.R.Crim.P. 5.1, a defendant must be discharged "if it appears either a public offense has not been committed, or there is not sufficient cause to believe the defendant guilty of the offense...." *See State v. Morrissey*, 295 N.W.2d 307, 310 (N.D.1980) (explaining N.D.R.Crim.P. 5.1 superseded N.D.C.C. §§ 29–07–18 and 29–07–20); *Green v. Whipple*, 89 N.W.2d 881, 882–83 (N.D.1958) (applying statutory predecessor to N.D.R.Crim.P. 5.1). Probable cause does not "require that at a preliminary hearing the commission of a public offense be established with absolute certainty or beyond a reasonable doubt." *Green* at 883; *see Morrissey* at 311 (explaining "the term 'probable cause' has the same meaning in the context of a decision to bind over a defendant for trial" as probable cause to arrest); *see also Torstenson v. Moore*, 1997 ND 159, ¶ 17, 567 N.W.2d 622 (explaining when probable cause to arrest exists). " 'To justify binding over for trial a person accused of crime, it is only necessary at the preliminary examination that sufficient evidence be adduced to satisfy the examining magistrate that a crime has been committed and that the accused is probably guilty.' " *Green* at 884 (quoting *Application of Windle*, 179 Kan. 239, 294 P.2d 213, 214 (1956)); *see State v. Bockert*, 257 Kan. 488, 893 P.2d 832, 835 (1995); *see also* N.D.R.Crim.P. 5.1 explanatory note (1994) (explaining N.D.R.Crim.P. 5.1 is similar to the federal rule, but the federal rule requirement that probable cause be based upon "substantial evidence" is "unnecessary and undesirable," and "[t]he language of the Rule tracks existing case law on the subject"); *Schiermeister v. Riskedahl*, 449 N.W.2d 566,

567 (N.D.1989) ("On review, this Court does not weigh the evidence but simply ascertains whether there was some relevant evidence upon which the magistrate found probable cause."). "A magistrate exceeds his jurisdiction when his probable cause finding to bind over a defendant is based on either no evidence that the defendant committed the offense or on irrelevant evidence." *Schiermeister* at 567; *see State v. Skar,* 313 N.W.2d 746, 749 (N.D.1981) ("[A] committing magistrate who finds probable cause to bind over a defendant on the basis of some relevant evidence does not exceed his jurisdiction.").

### C

### 1

▮ [¶ 11] N.D.C.C. § 12.1–06–04, which defines criminal conspiracy, requires two elements: an agreement and an overt act. *See, e.g., In Interest of P.A.,* 1997 ND 146, ¶ 9, 566 N.W.2d 422. Serr concedes the trial court erred when it concluded possession of controlled substances "without other evidence" is not an overt act as required by N.D.C.C. § 12.1–06–04. It is not clear whether Koble also concedes this point. In *In Interest of P.A.* at ¶ 11 we explained, "[n]early any act will fulfill the overt act requirement." We conclude possession of a controlled substance can be an overt act indicating conspiracy to deliver a controlled substance. *See State v. Lind,* 322 N.W.2d 826, 833 (N.D.1982); *see also United States v. Felix,* 503 U.S. 378, 390, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992) (" '[T]he same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses ....' " (quoting *United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947))); 4 Charles E. Torcia, *Wharton's Criminal Law* § 682 (15th ed.1996).

### 2

[¶ 12] The main issue on appeal concerns the agreement requirement. The criminal complaints charge Serr and Koble conspired with "each other and others" to deliver controlled substances. Moe would be at least one of the "and others" referred to in the criminal complaint, and under N.D.C.C. § 12.1–06–04(4), "[i]t is no defense ... the person with whom such person is alleged to have conspired ... has not been prosecuted...."

### a

▮ [¶ 13] The trial court's summary of facts noted "Jamie Moe was heard during the course of a controlled substance transaction saying that he usually procures illegal drugs from Koble for further sale." Under N.D.C.C. § 12.1–06–04(1), an agreement to commit a conspiracy "need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances." *See, e.g., In Interest of P.A.* at ¶ 9 ("An explicit agreement need not be proved, and the agreement may be implied by the existence of other supporting circumstances."). The State argues this evidence shows Koble agreeing to deliver drugs to another. We agree, however, "proof of a buyer-seller relationship without more is not sufficient to prove a *conspiracy*." *E.g., United States v. Finch,* 16 F.3d 228, 231 (8th Cir.1994) (emphasis added); *see also, e.g., People v. Justice,* 454 Mich. 334, 562 N.W.2d 652, 659 n. 26 (1997); *cf. United States v. Clay,* 37 F.3d 338, 341 (7th Cir.1994) ("[A] simple agreement between a buyer and seller to exchange something of value for cocaine cannot alone constitute a conspiracy because such an agreement is itself the substantive crime. The 'something more' that is necessary for the existence of a true drug distribution conspiracy is a further understanding between the buyer and seller, often implicit, that usually relates to the subsequent distribution of the narcotics ...." (citations omitted)). While Moe's statements indicate he is not merely a buyer, but is also reselling, "[i]t is not even sufficient if the evidence shows a buy-sell agreement but also shows that the buyer ultimately resold the drugs; rather, the resale must have been contemplated by the original two parties and must have been part of the 'conspiratorial' agreement." *United States v. Kozinski,* 16 F.3d 795, 808 (7th Cir.1994). Thus, while the evidence indicates Moe was reselling, there is no evidence—not even evidence which would allow an inference—Koble and Moe had agreed to distribute. *Compare Clay* at 342 (explaining regular, large purchases of cocaine on credit permit inferring agreement); *Kozinski* at 808–09 (focusing upon taped conversations, financing arrangement, quantity

of drugs, fact buyer was pregnant, and fact buyer possessed items used by someone re-selling); *United States v. Gutierrez*, 978 F.2d 1463, 1470 (7th Cir.1992) (noting sale of ten to twelve kilograms per week indicated cocaine was sold for re-sale rather than for personal use).

#### b

[¶ 14] The State also argues drugs and other evidence found in Koble's apartment provide circumstantial evidence Serr and Koble had agreed to deliver drugs. Serr argues the evidence does not support the existence of an agreement between himself and Koble.[1] Even assuming the evidence showed Serr lived at Koble's apartment, and even assuming Serr knew of illegal activity being conducted by Koble, or vice versa, an agreement "is not supplied by mere knowledge of an illegal activity ... let alone by mere association with other conspirators or mere presence at the scene of the conspiratorial deeds." *United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir.1991), *aff'd*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *see also United States v. Rogers*, 982 F.2d 1241, 1244 (8th Cir.1993) ("[E]vidence of association or acquaintance, though relevant, is not enough by itself to establish a conspiracy."); *cf. State v. Gilberts*, 497 N.W.2d 93, 97 (N.D.1993) ("Usually, mere association with a known or suspected criminal or presence at the scene of a crime is not probable cause."); *Zander v. S.J.K.*, 256 N.W.2d 713, 715 (N.D.1977) ("[M]ere presence at the scene of a crime is not enough to make one an accomplice.").

[¶ 15] Several cases illustrate the "something more" necessary to evidence a conspiratorial agreement. *Cf. Zander* at 715. For example, in *United States v. Sobrilski*, 127 F.3d 669, 673–74 (8th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1093, 140 L.Ed.2d 184 (1998), the fact Martin lived in the same trailer as Sobrilski, combined with her presence during the drug transaction, checking whether purchasers were law enforcement officers, placing a drug sample in her pocket, and stating she liked the drug and did not have to pay for it, all indicated an agreement to participate in the conspiracy. In *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir.1990), evidence Ivey drove the car to where the drugs were to be picked up, had more income than could be accounted for, made a telephone call to co-conspirator's house, and possessed drugs at time of arrest, provided a basis for an agreement to be inferred. Similarly in *Rogers*, evidence the defendant was present at some transactions, had retrieved a sheet of LSD for co-conspirator, and was with co-conspirator at time of arrest, gave a basis for finding an agreement. *Rogers* at 1244–45; *see also State v. Esparza*, 1998 ND 13, ¶¶ 18–19, 575 N.W.2d 203 (affirming conviction for conspiracy to commit armed robbery where Esparza was present on night before shooting when "the spoils of a robbery were divided" and testimony detailed Esparza's participation and presence); *In Interest of P.A.* at ¶ 10 (holding court properly inferred a conspiratorial agreement where four boys, including P.A., were seen together throwing rocks); *In Interest of J.C.S.*, 1997 ND 126, ¶ 11, 565 N.W.2d 759 (holding fact J.C.S. provided transportation to other boys, knew two of them had broken into Trans Am, later voluntarily returned to Trans Am, and approached and looked inside Trans Am, provided sufficient evidence "to establish an implicit agreement"); *In Interest of J.A.G.*, 552 N.W.2d 317, 321 (N.D.1996) (holding evidence group left from J.A.G.'s residence on night of shooting, the gun was stored at J.A.G.'s residence, J.A.G. told driver to wait until others got back into car after shooting, J.A.G. was present on night prior

---

1. Serr argues the evidence does not show whether an envelope found in Koble's apartment with his name on it had the address of Koble's apartment on it. A similar argument was made in *Hinkel v. Racek*, 514 N.W.2d 382, 383 (N.D. 1994). In *Hinkel*, an officer testified about finding mail with the defendants' names on it, but "the officer did not testify about the dates on the mail, the mailing addresses, the location of the mail in the apartment, or the identities of the senders or their return addresses." This Court concluded, however, "it was 'some relevant evidence' on which the magistrate could base his finding of probable cause." *Hinkel* at 383. *Hinkel*, however, only involved a probable cause determination for the charge of manufacturing or possessing with intent to manufacture or deliver a controlled substance. Thus, there was no determination as to whether sharing an apartment evidenced probable cause to find a conspiracy.

to shooting when B.G. left J.A.G.'s residence with the gun to commit an armed robbery, "loot" from robbery was kept at J.A.G.'s, and J.A.G. and others went out in J.A.G.'s mother's car looking for other people to rob was sufficient to support a conspiratorial agreement).

[¶ 16] In this case, however, there are no similar inferences to be made. There is no evidence Koble and Serr did deals together or assisted each other. While some informants stated Koble sold drugs and Moe stated Koble was his source and some informants stated Serr sold drugs, it does not appear any of the informants stated they got drugs from both Serr and Koble or that Serr and Koble were partners.

### IV
[¶ 17] The district court's order is affirmed.

[¶ 18] VANDE WALLE, C.J., and MESCHKE, NEUMANN and MARING, JJ., concur.