2000 ND 91

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Robert Brian FOLEY, Defendant and Appellee.**

No. 990234.

Supreme Court of North Dakota.

May 11, 2000.

Allen M. Koppy, State's Attorney, Mandan, N.D., for plaintiff and appellant.

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] The State of North Dakota appeals from a trial court order dismissing the charge of felon in possession of a firearm against Robert Brian Foley for lack of probable cause. We conclude we have jurisdiction to hear the State's appeal; however, we are unable to clearly determine the factual basis for the trial court's conclusion that probable cause did not exist. Therefore, we reverse and remand for additional findings of fact and reconsideration of the issue.

I.

[¶ 2] Foley was charged by criminal complaint with one count of being a felon in possession of a firearm in violation of N.D.C.C. § 62.1–02–01. At Foley's preliminary hearing, Officer William Stepp of the Mandan Police Department testified as to his recollection of the events leading to

Foley's arrest. According to Officer Stepp, while on patrol the evening of May 12, 1999, he heard shots fired at the shooting range on the grounds of the North Dakota Youth Correctional Center. Knowing that the range was closed, Stepp drove over to investigate; he testified that upon entering the range he saw two men, Foley and his half-brother Lawrence Boone, standing by two rifles which were propped up on sandbags. Stepp asked the men for identification; he recalled that Boone produced a drivers license and Foley had no identification. Stepp called the men's names into dispatch and learned an active warrant existed for Foley in California. According to Stepp, Foley confirmed he was a convicted felon. Stepp testified he inquired why Foley was in possession of a firearm, saying, "I asked him, because of his convicted felon status, why he was in possession of a firearm out at the pistol range. He told me that it was his brother's rifle and he was just using it down there, he doesn't actually own it." Stepp testified he then explained Foley was not allowed to possess or use a gun in any manner and that Foley responded by "nodd[ing] his head like he understood that." Stepp confiscated the weapon Foley had been standing nearest to, a Marlin .22 long rifle semiautomatic, and testified that the seized weapon made sounds consistent with the gun shots he heard while on patrol. Stepp never saw Foley touch either of the weapons, and the State presented no fingerprint evidence linking Foley to either weapon.

[¶ 3] Boone also testified at the preliminary hearing, disputing much of Officer Stepp's testimony. According to Boone, Foley came to the range to teach Boone how to sight in a .22. Boone stated Foley did not own either of the weapons and further, that Foley never touched either of the guns; Boone took the guns out of the trunk of the car, set them up on the sandbags himself, and he alone fired them. Foley merely looked through binoculars, telling Boone where to aim the rifle. Boone testified when Officer Stepp's car approached, he and Foley believed their girlfriends had returned with lunch and they began walking toward the entrance of the range, stopping halfway to light up a cigarette; the two men were nowhere near the guns when Stepp came through the entrance. Boone also testified Stepp was mistaken about which one of them provided identification; he was the one without identification while Foley presented his drivers license. Finally, Boone disputed Stepp's recollection of the conversation with Foley. According to Boone, Stepp never really questioned Foley about using the firearm, but simply told Foley he was a felon in possession of a firearm. In addition, Boone stated that when told the officer would say he had admitted using the weapon, Foley denied ever making that statement.

[¶ 4] The trial court issued its order on July 2, 1999. In the order, the trial court concluded the State failed to present sufficient evidence to bind Foley over for trial and dismissed the charge for lack of probable cause.

## II.

[¶ 5] Foley argues the trial court's determination that the State presented insufficient evidence to support a finding of probable cause to bind him over was essentially an acquittal. Thus, Foley contends we lack jurisdiction to hear the State's appeal because he is now protected by the prohibition against double jeopardy. We disagree.

[¶ 6] The double jeopardy clause, found in the Fifth Amendment of the U.S. Constitution, protects against successive prosecutions and punishments for the same criminal offense. *State v. O'Rourke*, 544 N.W.2d 384, 386 (N.D.1996). North Dakota's Constitution also commands protection against double jeopardy. N.D. Const. art. I, § 12. The underlying idea of these double jeopardy clauses is,

that the State with all its resources and power should not be allowed to make

repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Serfass v. United States,* 420 U.S. 377, 387–88, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). However, an accused may not avail herself of the protections afforded by these constitutional provisions until she has first been put into jeopardy. *O'Rourke,* 544 N.W.2d at 386. The United States Supreme Court has explained that the point at which jeopardy "attaches" is that moment when the defendant is "put to trial before the trier of the facts." *Serfass,* 420 U.S. at 388, 95 S.Ct. 1055. In a jury trial, jeopardy attaches when the jury is empaneled and sworn; in a bench trial, it attaches when the court begins to hear the evidence. *Id.*

[¶ 7] Unlike a trial, a preliminary hearing is not an adjudication of an accused's guilt or innocence; rather it is a hearing to determine whether an accused probably committed a crime and a tool to "ferret out groundless and improvident prosecutions and to prevent the accused's detention without probable cause." *Walker v. Schneider,* 477 N.W.2d 167, 172 (N.D. 1991). Double jeopardy does not attach at the preliminary hearing stage because an accused has not yet been put to trial before a trier of fact. *Id.* at 173. Thus, our review of the trial court's determination at the preliminary hearing is not barred because Foley may not yet avail himself of the protections afforded by the double jeopardy clauses.

### III.

[¶ 8] The trial court concluded probable cause did not exist to bind Foley over for trial because there was no evidence that Foley exercised control over the firearm. Under N.D.R.Crim.P. 5.1(b), a defendant must be discharged "if it appears either a public offense has not been committed, or there is not sufficient cause to believe the defendant guilty of the offense...." *State v. Serr,* 1998 ND 66, ¶ 10, 575 N.W.2d 896. The probable cause standard does not require the State to establish that a crime occurred with absolute certainty or beyond a reasonable doubt, rather it is only necessary for the State to produce sufficient evidence "to satisfy the examining magistrate that a crime has been committed and that the accused is probably guilty." *Id.* On appeal, we will not reverse a trial court's findings of fact in preliminary proceedings in a criminal case if, after resolving conflicts in the testimony in favor of affirmance, sufficient competent evidence exists which is fairly capable of supporting the trial court's findings and the decision is not contrary to the manifest weight of the evidence. *State v. Erbele,* 554 N.W.2d 448, 450 (N.D.1996). Whether the facts found by the trial court reach the level of probable cause is a question of law, fully reviewable on appeal. *Serr,* at ¶ 9.

[¶ 9] Officer Stepp testified Foley admitted he was "using" the rifle. It is reasonable to infer from that statement that Foley had handled, and thus controlled, one of the weapons at the range. However, the trial court makes no mention of the alleged admission in its order.

[¶ 10] It is possible that the trial court simply disbelieved Officer Stepp's testimony, finding Boone's account more credible. "Courts almost uniformly recognize that the magistrate [at a preliminary hearing] has authority to judge credibility." La Fave, Israel & King, *Criminal Procedure* § 14.3(b) (1999). We too recognize this authority, doing so for several reasons. First, in North Dakota, a defendant "may cross-examine adverse witnesses and may introduce evidence" during a preliminary hearing. N.D.R.Crim.P. 5.1(a). No reason would exist for allowing the defense to cross-examine prosecution witnesses and present contradictory evidence if the magistrate had no authority to

judge credibility. La Fave, Israel & King, *Criminal Procedure* § 14.3(b). Second, this Court has previously recognized the authority of the lower court to determine the credibility of witnesses during preliminary proceedings in criminal cases. In *Erbele*, we reviewed an order granting a motion to suppress evidence, and in the context of that preliminary proceeding we recognized "it is the trial court's function to consider the testimony and weigh the credibility of the witnesses." 554 N.W.2d at 450. In addition, our appellate standard of review of the trial court's findings in the context of a pre-trial suppression motion is identical to that used when we review a trial court's determination of probable cause at a preliminary hearing. *Id.; Serr,* 1998 ND 66, ¶ 9, 575 N.W.2d 896. Finally, our standard of review of the lower court's findings in preliminary proceedings in criminal cases expressly recognizes conflicts in the evidence will exist and that the trial court will weigh the conflicting evidence in making its probable cause determination; our standard requires this Court to defer to the trial court's findings by resolving conflicts in the testimony in favor of affirming the lower court's decision. *Serr,* at ¶ 9.

[¶ 11] While the trial court had the authority to determine Officer Stepp's credibility, the order dismissing the charge against Foley contains no indication the trial court disbelieved Stepp, instead the trial court seems simply to have either overlooked or ignored his testimony regarding the alleged admission. Though the trial court made findings of fact, it did not specifically address the conflict in the testimony regarding Foley's admission he used the gun. If that conflict is resolved against Foley, evidence of actual possession exists which would support a finding of probable cause to bind Foley over. Therefore, we reverse the trial court's order and remand for the trial court to make additional findings of fact and reconsider the issue of whether probable cause exists to bind Foley over for trial.

## IV.

[¶ 12] Foley raises issues on appeal regarding his *Miranda* rights and the corpus delicti rule. We do not address these issues because they were not raised in the trial court. *See City of Fargo v. Bommersbach,* 511 N.W.2d 563, 566 (N.D.1994). In addition, though the trial court considered it, we do not address the issue of whether constructive possession satisfies the possession element of N.D.C.C. § 62.1–02–01 because the answer is not necessary to the determination of this appeal. *See State v. Osier,* 1997 ND 170, ¶ 14, 569 N.W.2d 441. We reverse and remand and direct the trial court to make additional findings and reconsider its probable cause determination.

[¶ 13] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.