2008 ND 135

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Charles BLUNT, Defendant and Appellee.**

**No. 20070247.**

Supreme Court of North Dakota.

June 30, 2008.

Cynthia Mae Feland (argued), Assistant State's Attorney, and Lloyd Clayton Suhr (appeared), Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellant.

Michael Ray Hoffman, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]   The State appealed from a district court order dismissing a criminal complaint charging Charles Blunt with two counts of misapplication of entrusted property.  We reverse and remand, concluding (1) personal gain to the defendant is not an element of the crime of misapplication of entrusted property, and (2) the district court erred in concluding there was not probable cause to believe that an offense had been committed or that Blunt had committed it.

I

[¶ 2]   Blunt was the Executive Director and CEO of Workforce Safety & Insurance ("WSI") from 2004 to 2007.  In 2006, the State Auditor's Office conducted a performance review of WSI.  The Auditor's report "identified expenditures appearing to result in noncompliance with constitutional provisions, state law, and OMB policy" totaling more than $18,000.  Among the alleged improper expenditures noted in the Auditor's report were gift certificates to restaurants, gas stations, shopping malls, and movie theaters given to certain WSI employees; food, beverages, flowers, balloons, decorations, costume rentals, ornaments, and gifts for WSI meetings; costs of paying for legislators to attend insurance conventions;  costs of a luncheon

for a legislative committee to present WSI's proposed legislative bills for 2005; and bonuses paid to three high-ranking WSI executives.

[¶ 3] As a result of the Auditor's report, Blunt was charged with two counts of misapplication of entrusted property in violation of N.D.C.C. § 12.1–23–07(1). Count I charged Blunt with a class B felony for misapplying over $10,000 in WSI funds for gift certificates, meeting expenses, and expenditures on legislators. *See* N.D.C.C. § 12.1–23–07(2)(a). Count II charged Blunt with a class C felony for misapplying over $500 in WSI funds for improper bonuses to three high-ranking WSI executives. *See* N.D.C.C. § 12.1–23–07(2)(b). Following a preliminary hearing and submission of post-hearing briefs, the district court concluded the State had failed to establish probable cause that an offense had been committed or that Blunt had committed it. An order dismissing the criminal complaint was entered, and the State appealed.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06(1). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 29–28–07(1). *See State v. Baumgartner*, 2001 ND 202, ¶ 6, 637 N.W.2d 14 (an order dismissing a criminal complaint is the equivalent of an order quashing an information or indictment and is appealable under N.D.C.C. § 29–28–07(1)); *State v. Serr*, 1998 ND 66, ¶¶ 4, 7, 575 N.W.2d 896 (same). The appeal was timely under N.D.R.App.P. 4(b)(1)(B).

## II

■ [¶ 5] The State contends the district court erroneously engrafted an additional element onto the offense of misapplication of entrusted funds when it based its dismissal of the complaint on the State's failure to show that Blunt personally bene-

fitted from any unauthorized expenditure of public funds.

[¶ 6] Misapplication of entrusted property is prohibited by N.D.C.C. § 12.1–23–07(1):

A person is guilty of misapplication of entrusted property if the person disposes of, uses, or transfers any interest in property that has been entrusted to the person as a fiduciary, or in the person's capacity as a public servant or an officer, director, agent, employee of, or a person controlling a financial institution, in a manner that the person knows is not authorized and that the person knows to involve a risk of loss or detriment to the owner of the property or to the government or other person for whose benefit the property was entrusted.

■ [¶ 7] This Court has identified the elements of the offense as: (1) the disposal, use, or transfer; (2) of any interest in property; (3) which has been entrusted to the defendant; (4) as a fiduciary or in his capacity as a public servant; (5) in a manner he knows is not authorized; (6) and that he knows to involve a risk of loss or detriment to; (7) the owner of the property or the government. *State v. Barendt*, 2007 ND 164, ¶ 10, 740 N.W.2d 87; *State v. Jelliff*, 251 N.W.2d 1, 7 (N.D.1977). Neither the language of N.D.C.C. § 12.1–23–07 nor the legislative histories of the statute or the provision of the Proposed Federal Criminal Code from which it was adopted indicate the State is required to show that the defendant personally benefitted from misuse of the property. *See* National Commission on Reform of Federal Criminal Laws, *Final Report* § 1737 (Misapplication of Entrusted Property) (1971); II *Working Papers of the National Commission on Reform of Federal Criminal Laws* 974–75 (July 1970).

[¶ 8] The district court based its conclusion that the State was required to show Blunt personally benefitted from the unauthorized expenditures upon the fact that the defendant in *Jelliff* had personally benefitted from the misapplication of entrusted property:

In *Jelliff* the state's attorney had personally taken funds for himself. Indeed, the Court is not aware of any case in North Dakota involving misapplication of public funds by a government employee or officer in which the defendant or the defendant's family did not benefit from such misapplication of funds, although it is conceivable some such person could develop a "Robin Hood" personality, but the Court is not aware of any such North Dakota case. The state's argument in this case has to be that Blunt gave away funds he was entrusted to manage as there is no evidence he used any of the funds for himself, although he could easily have had a cup of coffee or slice of cake at one of the events which led to these charges.

The district court concluded that "[w]ithout any evidence of self dealing in these public funds, there is no evidence that Blunt knew these meeting expenses and 'bonuses' 'involve a risk of loss or detriment . . . to the government.'"

[¶ 9] The court essentially engrafted an additional element onto the offense of misapplication of entrusted property that is not included in the statute. The language of the statute, the legislative history, and our case law do not support the district court's conclusion. The focus and purpose of the statute is protection of the owner's interest in the entrusted property, not whether the defendant received a personal benefit from misuse of the property. In short, "[a] public officer entrusted with public funds has no right to give them away." 63C Am.Jur.2d *Public Officers and Employees* § 265 (1997); *see also*

*Teigen v. State*, 2008 ND 88, ¶ 35, 749 N.W.2d 505 (Sandstrom, J., concurring specially) (N.D. Const. art. X, § 18, "restrain[s] . . . government actors from gifting public funds or property").

[¶ 10] We conclude the district court erred when it based its dismissal of the complaint upon lack of evidence that Blunt personally benefitted from the alleged unauthorized expenditures of public funds.

### III

[¶ 11] Blunt contends that even if the district court based its determination that the State had failed to establish probable cause upon its erroneous inclusion of an additional element in the offense, dismissal of the complaint was still appropriate. Blunt contends the court made findings of fact on other elements of the offense that support the court's conclusion there was not probable cause. Blunt argues the court's findings show the State failed to prove Blunt knew that the expenditures were unauthorized or that they involved a risk of loss or detriment to the government.

### A

[¶ 12] To some extent, the court's reasoning and analysis, and Blunt's arguments on appeal, are premised upon an apparent misconception of the purpose and scope of a preliminary hearing.

[¶ 13] Preliminary hearings are governed by N.D.R.Crim.P. 5.1:

(a) Probable Cause Finding. If the magistrate finds probable cause to believe an offense has been committed and the defendant committed the offense, an arraignment must be scheduled. The finding of probable cause may be based on hearsay evidence in whole or in part. The defendant may cross-examine adverse witnesses and may introduce evidence. The magistrate may receive evi-

dence that would be inadmissible at the trial.

(b) Discharge of the Defendant. If the magistrate hears evidence on behalf of the respective parties in a preliminary examination, and finds either a public offense has not been committed or there is not sufficient cause to believe the defendant guilty of the offense, the magistrate must discharge the defendant.

[¶ 14] This Court has said that in determining whether probable cause exists, the district court may judge credibility and make findings of fact. *State v. Foley*, 2000 ND 91, ¶ 10, 610 N.W.2d 49; *State v. Serr*, 1998 ND 66, ¶ 9, 575 N.W.2d 896. On appeal, we will not reverse the district court's findings of fact in preliminary proceedings in a criminal case if, after resolving conflicts in the evidence in favor of affirmance, sufficient competent evidence exists that is fairly capable of supporting the court's findings and the decision is not contrary to the manifest weight of the evidence. *Foley*, at ¶ 8; *Serr*, at ¶ 9. Whether the facts found by the district court reach the level of probable cause is a question of law, fully reviewable on appeal. *Heick v. Erickson*, 2001 ND 200, ¶ 10, 636 N.W.2d 913; *Foley*, at ¶ 8; *Serr*, at ¶ 9.

[¶ 15] The district court's authority to assess credibility and make findings of fact must be viewed, however, in the context of the minimal burden of proof placed upon the State and the limited purpose of the preliminary hearing. The State is not required to prove with absolute certainty or beyond a reasonable doubt that a crime occurred, but rather need only produce sufficient evidence to satisfy the court that a crime has been committed and that the accused is probably guilty. *State v. Perreault*, 2002 ND 14, ¶ 12, 638 N.W.2d 541; *Foley*, 2000 ND 91, ¶ 8, 610 N.W.2d 49; *Serr*, 1998 ND 66, ¶ 10, 575 N.W.2d 896. This Court has

stressed that a preliminary hearing is not a trial on the merits. *State v. Buchholz*, 2005 ND 30, ¶ 11, 692 N.W.2d 105; *Perreault*, at ¶ 12; *Walker v. Schneider*, 477 N.W.2d 167, 172 (N.D.1991); *Dickinson Newspapers, Inc. v. Jorgensen*, 338 N.W.2d 72, 75 (N.D.1983). It is not the purpose of the preliminary hearing to determine the defendant's guilt or innocence. *Buchholz*, at ¶ 11; *Foley*, at ¶ 7; *Walker*, at 172. Rather, the preliminary hearing is a "safety device" to prevent the accused's detention without probable cause, and its purpose is to determine whether a trial should be held to determine the guilt or innocence of the accused. *Buchholz*, at ¶ 11; *Dickinson Newspapers*, at 75. At its core, the preliminary hearing is a "tool to 'ferret out groundless and improvident prosecutions.'" *Foley*, at ¶ 7 (quoting *Walker*, at 172).

[¶ 16] Accordingly, the probable cause showing required at a preliminary hearing under N.D.R.Crim.P. 5.1 is "a minimal burden of proof." *Healy v. Healy*, 397 N.W.2d 71, 73 (N.D.1986). The standard of probable cause at the preliminary hearing is the same standard of probable cause required for a valid arrest. *Perreault*, 2002 ND 14, ¶ 12, 638 N.W.2d 541; *Serr*, 1998 ND 66, ¶ 10, 575 N.W.2d 896; *State v. Morrissey*, 295 N.W.2d 307, 311 (N.D.1980). Under that standard, probable cause exists when the facts and circumstances "are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed," and "[k]nowledge of facts sufficient to establish guilt is not necessary to establish probable cause." *Hoover v. Director, N.D. Dep't of Transp.*, 2008 ND 87, ¶ 9, 748 N.W.2d 730 (quoting *Rist v. North Dakota Dep't of Transp.*, 2003 ND 113, ¶ 15, 665 N.W.2d 45); *see also State v. Washington*, 2007 ND 138, ¶ 12, 737 N.W.2d 382.

[¶ 17] In states which, like North Dakota, employ the preliminary hearing as a screening tool for probable cause rather than as a mini-trial on guilt or innocence, the court's authority to weigh the evidence and judge credibility of witnesses is limited. *See* 4 Wayne R. La-Fave et al., *Criminal Procedure* § 14.3(b) (3d ed.2007). For example, in *Hunter v. District Court,* 190 Colo. 48, 543 P.2d 1265, 1268 (1975), the court stressed that in Colorado the preliminary hearing is not a mini-trial, and the trial court's "role is not a trier of fact," but its "function is solely to determine the existence or absence of probable cause." The court articulated the trial court's limited authority to assess credibility at that stage of the proceedings:

> We hold that a judge in a preliminary hearing has jurisdiction to consider the credibility of witnesses only when, as a matter of law, the testimony is implausible or incredible. When there is a mere conflict in the testimony, a question of fact exists for the jury, and the judge must draw the inference favorable to the prosecution.

*Id.; see also* 1 Nancy Hollander et al., *Wharton's Criminal Procedure* § 8.22 (14th ed.2007) (quoting *Hunter*); 4 La-Fave, *supra,* at § 14.3(b) (quoting *Hunter*). We believe this standard appropriately corresponds with the limited purpose and scope of a preliminary hearing. As indicated by Professor LaFave, "[t]he preliminary hearing screening function . . . no more puts the magistrate in the shoes of the jury or prosecutor than does the function of a trial judge in a ruling on a motion to dismiss or a motion for a directed verdict of acquittal." 4 LaFave, *supra* at § 14.3(a).

[¶ 18] We must view the district court's findings and rationale within the context of this limited scope of the preliminary hearing.

**B**

[¶ 19] The district court apparently based its determination of no probable cause in part on its finding that Blunt may have believed the expenditures were implicitly authorized by the WSI Board of Directors:

> Absent any evidence the WSI board of directors is trying to violate the law or commit any criminal act, the Court sees no reason the WSI board of directors should not be left to resolve these issues. Without evidence of any such action, there is no evidence Blunt knew he was not authorized to do what he did. If the WSI board of directors, when made aware of these expenses, did not give Blunt any instructions to the contrary, it is not inconceivable Blunt understood he was authorized to make these compensation, meeting expense and incentive expenditures.

[¶ 20] The language used by the district court evidences a misunderstanding of the legal standard to be employed at the preliminary hearing. The district court may not base its conclusion that probable cause was lacking upon a finding that "it is not inconceivable" there is an innocent explanation for the defendant's conduct. The phrase "it is not inconceivable" suggests the court was employing a standard that goes beyond even the "beyond a reasonable doubt" standard necessary for conviction. We explained above that it is not appropriate at preliminary hearing to dismiss on the basis of "a mere conflict in testimony," for example, a case of "he said, she said." Under the standard employed by the district court, many or most murder charges would be subject to being dismissed at preliminary hearing because it would be "not inconceivable" that the defendant could have acted in self-defense. The State was not required to negate every possible scenario of

innocence, but merely to satisfy the "minimal burden of proof" for probable cause. *See Healy*, 397 N.W.2d at 73. If it is generally presumed that everyone knows the law, *e.g., State v. Buchholz*, 2006 ND 227, ¶¶ 13, 16, 723 N.W.2d 534, it must be presumed that the head of a large state agency knows the law regarding appropriate expenditure of the public funds entrusted to him. *See In re Dvorak*, 2000 ND 98, ¶ 12, 611 N.W.2d 147 (if all persons are presumed to know the law, then "certainly" a seasoned attorney knew or should have known of applicable legal principles). The district court's speculation that, if the WSI Board of Directors was aware of the expenditures and did not complain to Blunt, "it is not inconceivable Blunt understood he was authorized to make these … expenditures" does not provide a sufficient basis for concluding there was not probable cause.

## C

■■■ [¶ 21] The court also premised its conclusion there was not probable cause on its finding the State had failed to demonstrate a risk of loss to the government. The court reasoned:

> With respect to the question of whether Blunt's actions with respect to gift certificate incentives, meeting expenses and "bonuses" constituted "a loss to the government," there is no evidence the government lost anything as all of these expenditures appear to benefit the government since arguably such expenditures would make employees happy and thus better state workers, and would also benefit the government by assisting in the retention of good employees. Perhaps it can be argued that WSI employees who did not receive these benefits would be unhappy and thus less productive, but there is no evidence of any loss of production. Nor is there any evidence that such expenditures were in

excess of WSI's budget. The Court finds no loss to the government.

■■■ [¶ 22] Although the court addressed this issue within the context of the "risk of loss" element of the offense, the court's finding that the expenditures created a public benefit in the form of happier, more productive workers would more appropriately apply, *if at all*, to the element requiring proof the expenditures were not authorized. If the court's rationale is that an unauthorized expenditure of public funds creates no risk of loss to the government if there is some tangential benefit to the public, we reject it. It is axiomatic that if public funds are spent illegally, without constitutional or statutory authorization, there is a clear risk of loss to the state. The people and the legislature, through the constitution and laws of this State, have delineated the parameters of the appropriate expenditure of public funds, and any expenditure in violation of those provisions by definition creates a loss to the government.

■■■ [¶ 23] The district court's rationale is equally erroneous when viewed in the context of the element requiring proof the expenditures were not authorized. To be authorized, it is "widely recognized" that expenditures of public funds "must be for a public purpose." 63C Am.Jur.2d *Public Funds* § 58 (1997). In this State, this restriction is constitutionally based. *See* N.D. Const. art. X, § 18 ("neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor"). These provisions restrict expenditures of public funds to public purposes. *See, e.g., Teigen v. State*, 2008 ND 88, ¶ 35, 749 N.W.2d 505 (Sandstrom, J., concurring specially) ("[t]he North Dakota constitutional limitation on gifts [in N.D. Const. art. X, § 18] is

the action of the people in general to restrain the government actors from gifting public funds or property"); *Gripentrog v. City of Wahpeton,* 126 N.W.2d 230, 237 (N.D.1964). In this context, a public purpose is defined as "the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political division." *Adams County Record v. Greater North Dakota Ass'n,* 529 N.W.2d 830, 836 n. 1 (N.D.1995) (quoting *Gripentrog,* at 237).

[¶ 24] In this case, the district court implicitly found that, as a matter of law, the expenditure of public funds for gift certificates, food, beverages, flowers, balloons, decorations, costume rentals, ornaments, and gifts was authorized because there was a corresponding public benefit in the form of happier, more productive employees. The critical flaw in the district court's rationale is that it has no limits. If Blunt had used public funds to give every WSI employee a new car, or to take them and their families to Disneyland, presumably the employees would have been happier, and it may have been easier to retain good employees. We doubt, however, that anyone would argue it was an appropriate expenditure of public funds. While most of the expenditures in this case were relatively small on an individual basis, the aggregate alleged amounts to more than $18,000. We do not view that as an insignificant amount of public funds, nor would its misuse be inconsequential.

[¶ 25] We conclude the district court erred in basing its determination there was not probable cause on a perceived public benefit from expenditure of the funds.

D

[¶ 26] Blunt contends, and the district court concluded, that the lump sum payments made to three WSI executives were retroactive pay increases, not illegal bonuses as alleged by the State.

[¶ 27] The Auditor's report characterized the payments as bonuses that were paid in violation of state law, and outlined the factual backgrounds of the payments. In 2005, WSI was apparently implementing a new compensation system. The three executives each received substantial pay raises. Their raises included three components: (1) an increase of up to five percent based upon their performance evaluation; (2) an increase to place them into their new pay grade in the new compensation system; and (3) an additional amount to be determined by Blunt. This third, additional component was paid retroactively, as well as going forward, and provided the basis for the State's allegation that improper bonuses were given.

[¶ 28] To demonstrate the effect of these increases, the first executive received a monthly salary increase of $1,334, of which $613 was the "bonus" determined by Blunt. This bonus amount was paid retroactively for four months, resulting in a $2,452 lump sum payment. The second executive received a monthly increase of $745, of which $347 was the additional amount awarded by Blunt. The bonus amount was applied back four months, for a $1,388 lump sum payment. The third executive received a $728 monthly increase, of which $480 was the bonus determined by Blunt. This amount was paid retroactively seven months, for a lump sum payment of $3,360. The State thus alleged in Count II of the complaint payment of improper bonuses in the aggregate amount of $7,200.

[¶ 29] The parties have focused their arguments on this issue upon whether the lump sum payments are appropriately characterized as bonuses or retroactive pay increases. The parties have not cited, and we have not found, a

statutory definition of "bonus." In ordinary usage, "bonus" is defined as "[a] premium paid in addition to what is due or expected," or, in the employment context, a payment "in addition to or in excess of the compensation that would ordinarily be given." *Black's Law Dictionary* 194 (8th ed.2004). The lump sum payments in this case fit that definition. The parties had an employment contract, and each had already performed the contract for the prior months. The employees had already received all of the amounts that were "due or expected" or that "would ordinarily be given." Thus, lump sum payments for work performed in the past, and which had already been fully compensated at the time the work was performed, constitute "bonuses."

[¶ 30] The State contends the payments were bonuses that did not comply with existing statutory state employee bonus programs. Under N.D.C.C. §§ 54–06–30 and 54–06–31, state agencies are authorized to pay performance bonuses or recruitment and retention bonuses under certain limited circumstances. Under either program, bonuses may be paid only if the agency has adopted a written policy implementing the program. *See* N.D.C.C. §§ 54–06–30 and 54–06–31. The evidence at the preliminary hearing showed WSI had not adopted written policies as required by the statutes, and Blunt does not contend the bonuses complied with the statutory requirements.

[¶ 31] We agree with the State that there is probable cause establishing lump sum payments constituting improper bonuses not authorized under state law. We further note, however, that even if the lump sum payments are characterized as retroactive pay increases, neither Blunt nor the district court has drawn our attention to any constitutional, statutory, or other legal authority allowing an agency head to award retroactive pay increases.

E

[¶ 32] We conclude the district court erred in concluding there was not probable cause to believe that an offense had been committed or that Blunt had committed it.

IV

[¶ 33] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. We conclude the district court erred in dismissing the criminal complaint against Blunt, and we reverse and remand for further proceedings in accordance with this opinion.

[¶ 34] GERALD W. VANDE WALLE, C.J., RICHARD L. HAGAR, D.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 35] The Honorable RICHARD L. HAGAR, D.J., sitting in place of KAPSNER, J., disqualified.