2011 ND 114

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Willie Demar MIDELL, Defendant and Appellee.**

**No. 20100286.**

Supreme Court of North Dakota.

June 21, 2011.

Petition for Rehearing Denied July 13, 2011.

Taylor Olson (argued), third-year law student, appearing under the rule on the limited practice of law by law students, and Mark R. Boening (appeared), Assistant State's Attorney, Fargo, ND, for plaintiff and appellant.

Monty G. Mertz, Fargo Public Defenders Office, Fargo, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] The State appealed from a district court order dismissing a charge of gross sexual imposition against Willie Demar Midell. We reverse, concluding the victim's testimony was neither implausible nor in-

credible as a matter of law, and remand for further proceedings consistent with this opinion.

## I.

[¶ 2] Willie Demar Midell was charged by information with gross sexual imposition in violation of N.D.C.C. § 12.1–20–03(1)(c). At the preliminary hearing, the complaining witness, S.D.W., testified on behalf of the State. Midell provided the testimony of S.D.W.'s friend, Ana Twedt, a sexual assault nurse examiner, and a forensic scientist from the State Crime Lab. The district court received S.D.W.'s written statement, the sexual assault examination kit, and the State Crime Lab report as evidence.

[¶ 3] According to S.D.W.'s testimony, she lived in a one-bedroom apartment in Fargo. Her friend, Ana Twedt, was living with her at that time. Both S.D.W. and Twedt slept in the living room, where a sectional couch was located; S.D.W. used the bedroom for storage. On the evening of December 14, 2009, two individuals were invited to S.D.W.'s apartment—Twedt's boyfriend, Joel Emery, and Midell, who was a friend of Emery and Twedt. S.D.W. did not know Midell. Emery and Midell came to the apartment, but Emery only stayed for a few minutes. S.D.W., Twedt, and Midell conversed in the living room. S.D.W. testified that throughout the conversation, Midell made sexual remarks and advances towards her, but she either ignored Midell or told him she was not interested in him. At one point, S.D.W. testified, Midell asked if he could cuddle with her or lie by her.

[¶ 4] S.D.W. testified Twedt fell asleep on the floor of the living room near the sectional couch. Because S.D.W. had to work the following morning, she took some cold medicine and lay down on one end of the sectional couch to fall asleep. Midell was on the other end of the sectional couch. S.D.W. testified Midell began to rub her leg, but S.D.W. asked him to stop and fell asleep on her back with her head on the armrest.

[¶ 5] According to S.D.W., she woke up because she could not breathe. Her pants and underwear were around her ankles, and Midell was having sex with her. She testified that Midell said, "I know you can feel this." S.D.W. did not say anything or move because, as she testified, she heard Twedt talk about an incident where Midell punched someone in the face, and was afraid for her own safety. Midell pulled up her underwear and pants. S.D.W. testified she did not move until after she believed Midell to have fallen asleep on the other end of the couch, at which time she woke up Twedt and asked her to leave the living room and come to the bedroom. S.D.W. told Twedt what had happened, and Twedt called Emery to pick up Midell. S.D.W. then experienced what she described as an anxiety attack, and Twedt eventually called 911.

[¶ 6] Emery and Twedt confronted Midell and asked him what had happened. Midell first denied having sex with S.D.W., but then admitted to having consensual sex with S.D.W. As Twedt testified, Midell did not immediately admit to having sex with S.D.W. because earlier, Twedt warned Midell not to, and Midell was embarrassed for not listening to Twedt. After this confrontation, Emery took Midell home.

[¶ 7] An officer responded to the 911 call and took S.D.W.'s statement. S.D.W. was later taken to the hospital for a sexual assault examination. The examination found fluid in S.D.W.'s vaginal area, belly button, between her breasts, and between her shoulder blades. The State Crime Lab detected Midell's DNA in a perineal swab and a vaginal swab.

[¶ 8] Upon the conclusion of the preliminary hearing, the district court dismissed the charge with prejudice, finding the State failed to establish probable cause that Midell committed the offense. Specifically, the district court found S.D.W.'s testimony "that she was unaware the defendant was having intercourse with her" to be implausible and incredible as a matter of law.

## II.

[¶ 9] On appeal, the State contends it presented evidence sufficient to support a finding of probable cause that Midell committed the offense. The State also argues the district court erred by finding S.D.W.'s testimony implausible and incredible.

[¶ 10] Whether facts found by a district court reach the level of probable cause is a question of law, fully reviewable on appeal. *State v. Smith*, 2010 ND 89, ¶ 6, 781 N.W.2d 650 (citing *State v. Blunt*, 2008 ND 135, ¶ 14, 751 N.W.2d 692). Generally, this Court "will not reverse the trial court's 'findings of fact in preliminary proceedings in a criminal case if, after resolving conflicts in the evidence in favor of affirmance, sufficient competent evidence exists that is fairly capable of supporting the court's findings and the decision is not contrary to the manifest weight of the evidence.'" *Id.* (quoting *Blunt*, at ¶ 14).

[¶ 11] In *Blunt*, however, we explained the role of the district court in a preliminary hearing and narrowed the district court's ability to assess credibility:

The district court's authority to assess credibility and make findings of fact must be viewed, however, in the context of the minimal burden of proof placed upon the State and the limited purpose of the preliminary hearing. The State is not required to prove with absolute certainty or beyond a reasonable doubt that a crime occurred, but rather need only produce sufficient evidence to satisfy the court that a crime has been committed and that the accused is probably guilty. This Court has stressed that a preliminary hearing is not a trial on the merits. It is not the purpose of the preliminary hearing to determine the defendant's guilt or innocence. Rather, the preliminary hearing is a "safety device" to prevent the accused's detention without probable cause, and its purpose is to determine whether a trial should be held to determine the guilt or innocence of the accused. At its core, the preliminary hearing is a "tool to 'ferret out groundless and improvident prosecutions.'"

Accordingly, the probable cause showing required at a preliminary hearing under N.D.R.Crim.P. 5.1 is "a minimal burden of proof." The standard of probable cause at the preliminary hearing is the same standard of probable cause required for a valid arrest. Under that standard, probable cause exists when the facts and circumstances "are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed," and "[k]nowledge of facts sufficient to establish guilt is not necessary to establish probable cause."

*Id.* at ¶¶ 15–16 (internal citations omitted).

[¶ 12] Ultimately, we held that, in light of the limited purpose and scope of a preliminary hearing, the district court can assess the credibility of witnesses only when, "as a matter of law, the testimony is implausible or incredible." *Id.* at ¶ 17 (quoting *Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265, 1268 (1975)). We also explained a mere conflict of testimony is a question of fact left for the jury, and that the district court must "draw the inference favorable to the prosecution." *Id.*

[¶ 13] Here, while the district court recited the correct standard, it exceeded the limited authority to weigh evidence and judge credibility as we explained in *Blunt*. The State charged Midell with violating N.D.C.C. § 12.1–20–03(1)(c), which provides:

1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

. . . .

c. That person knows or has reasonable cause to believe that the victim is unaware that a sexual act is being committed upon him or her;

Midell admitted he engaged in a sexual act with S.D.W. Thus, the only question before the district court was whether the State established probable cause that Midell knew or had reasonable cause to believe S.D.W. was unaware a sexual act was being committed upon her. More specifically, because the State's evidence was comprised of S.D.W.'s testimony and her written statement, the district court could only consider S.D.W.'s credibility if it was implausible or incredible, as required by *Blunt*.

[¶ 14] S.D.W. testified the sex was not consensual, stating she was asleep on the couch and awoke with Midell having sex with her. She testified her friend, Twedt, was a heavy sleeper and was not very close to the couch. S.D.W. testified she did not verbally or physically resist Midell because she did not know Midell and was scared because earlier in the night, she heard Twedt say Midell once punched a friend of hers for no reason.

[¶ 15] S.D.W.'s testimony was, to some extent, discredited by that of her friend, Ana Twedt, who was called to testify by Midell. Twedt testified she did not, earlier in the evening, talk about the incident where Midell punched a friend. Twedt testified she and S.D.W. had a disagreement that evening, although the substance of the disagreement is unclear. Twedt also stated she was a light sleeper, who awoke to S.D.W. and Midell having sex, but decided it would have been "awkward[ ]" to interrupt them. Twedt testified she was close enough to the couch where she could have reached out and touched S.D.W.

[¶ 16] Twedt's testimony was consistent, however, with S.D.W.'s testimony concerning S.D.W.'s anxiety attack and hyperventilation after the encounter. Twedt also testified Midell did not immediately admit to having sex with S.D.W. because earlier, Twedt warned Midell not to, and Midell was embarrassed for not listening to Twedt.

[¶ 17] S.D.W. provided testimony concerning whether Midell knew or had reasonable cause to believe S.D.W. was unaware of the sexual act. S.D.W. testified that once she awoke, Midell said "I know you can feel this." S.D.W. testified she did not react to this statement. S.D.W.'s lack of response indicates Midell had reasonable cause to know she was unaware of the sexual act. When considered in combination with the conflict of testimony between S.D.W. and Twedt, Midell's statement created a question of fact that should have been left for the jury. While the district court apparently thought S.D.W. had to have been aware of the sexual act, S.D.W.'s testimony was not necessarily implausible or incredible under *Blunt* because it amounted to a conflict of testimony proper for a jury to resolve.

[¶ 18] Accordingly, the district court was required to resolve the conflict in testimony in favor of the prosecution. *See Blunt*, at ¶ 17. Considering Midell's admission that he had sex with S.D.W., the State met its minimal burden by producing

testimony of the victim that raised key issues of credibility and fact. The evidence produced by the State was sufficient to establish that a crime had been committed and that Midell was probably guilty. Whether S.D.W. was asleep as it relates to Midell's knowledge of her awareness is a classic question of fact for the jury that rests almost completely on the credibility of witnesses.

[¶ 19] Further, the district court's order focuses on S.D.W.'s actual awareness, not on the knowledge, or purported knowledge, of Midell. Because Midell admitted to having sex with S.D.W., the only question before the district court was whether the State established probable cause that Midell knew or had reasonable cause to believe S.D.W. was unaware a sexual act was being committed upon her. *See* N.D.C.C. § 12.1–20–03(1)(c). The statute did not require the victim, here S.D.W., to have been actually unaware that a sexual act was being committed upon her, as the district court's order indicates.

### III.

[¶ 20] The remaining issues raised by the parties are not necessary to our decision. As S.D.W.'s testimony was neither implausible nor incredible as a matter of law, we reverse the district court's order dismissing a charge of gross sexual imposition against Midell and remand for further proceedings consistent with this opinion.

[¶ 21] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.