1999 ND 185

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mary Beth FREED, Defendant and Appellant.**

**No. 980344.**

Supreme Court of North Dakota.

Sept. 22, 1999.

Tom M. Henning, State's Attorney, Dickinson, ND, for plaintiff and appellee.

David F. Senn, Senn Law Office, Dickinson, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Mary Beth Freed appealed jury verdicts and a judgment finding her guilty of delivery of a controlled substance and conspiracy to deliver a controlled substance. We affirm.

[¶ 2] As a result of methamphetamine transactions in Dickinson on October 14 and 15, 1997, Freed was charged with delivering a controlled substance, methamphetamine, and conspiracy to deliver a controlled substance. The amended information alleged:

Count 1: That on or about October 15, 1997, at Dickinson, in Stark County, North Dakota, the Defendant Mary Beth Freed, willfully delivered a controlled substance when the Defendant delivered a quantity of methamphetamine, a schedule II controlled substance, to a confidential informant. The above act is in violation of N.D.C.C. Section 19–03.1–23 as constitutes a Class A Felony.

Count 2: That on or about October 14, 1997, at Dickinson, in Stark County, North Dakota, the Defendant, Mary Beth Freed, agreed with one or more persons to engage in or cause conduct which, in fact, constitutes an offense and one or more person did an overt act to effect the objective of the conspiracy when the Defendant conspired with another or others to deliver a controlled substance, methamphetamine, and a controlled substance, methamphetamine, was delivered in a vehicle operated by the Defendant to a co-conspirator who sold it to a confidential informant. The above act is in violation of N.D.C.C. Section 12.1–06–04 and 19–03.1–23 as constitutes a Class A Felony.

The trial court denied Freed's motion for separate trials on Counts 1 and 2.

[¶ 3] The jury returned verdicts finding Freed guilty on both counts. The trial court sentenced Freed to four years of imprisonment on Count 1, and four years of imprisonment on Count 2, with two years suspended, to be served concurrently with the sentence on Count 1. Freed appealed.

I

[¶ 4] Freed argues there was insufficient evidence to support the guilty verdicts. "Appellate review of the sufficiency of the evidence for a jury verdict is very limited." State v. Esparza, 1998 ND 13, ¶ 17, 575 N.W.2d 203. On appeal, "we look only to the evidence most favorable to the guilty verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction." State v. McKing, 1999 ND 81, ¶ 8, 593 N.W.2d 342. One challenging the sufficiency of the evidence to sustain a conviction entered on a jury verdict "must show the evidence, 'when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt.' " Esparza, at ¶ 17, quoting State v. Austin, 520 N.W.2d 564, 570 (N.D.1994). "The tasks of weighing the evidence and judging the credibility of the witnesses belong to the jury." State v. Carlson, 1997 ND 7, ¶ 51, 559 N.W.2d 802. We assume the jury believed the evidence supporting the verdict, and disbelieved any contrary evidence. Carlson, at ¶ 51.

[¶ 5] Freed contends there was insufficient evidence to support the conspiracy conviction because "there is no evidence that Freed and Tina Twogood or 'others' agreed to deliver illicit drugs to someone else." Section 12.1–06–04(1), N.D.C.C., provides:

A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.

Without more, proof of a buyer-seller relationship is insufficient to prove a conspiracy to deliver a controlled substance. State v. Serr, 1998 ND 66, ¶ 13, 575 N.W.2d 896. Even evidence a buyer was reselling is insufficient; " 'rather, the resale must have been contemplated by the original two parties and must have been part of the "con-

spiratorial" agreement.' " *Serr*, at ¶ 13, quoting *United States v. Kozinski*, 16 F.3d 795, 808 (7th Cir.1994). However, "[a] defendant's intent may be established by circumstantial evidence," *State v. Carlson*, 1997 ND 7, ¶ 51, 559 N.W.2d 802, and "possession of a controlled substance can be an overt act indicating conspiracy to deliver a controlled substance," *Serr*, at ¶ 11.

[¶ 6] Mark Daly, a narcotics investigator, testified: (1) Benjamin Gange told him "he was able to purchase methamphetamine from Miss Freed"; (2) Gange was searched and a body transmitter was placed on him; (3) Officers saw and heard Gange enter the home of Mark and Tina Twogood; (4) "Approximately when Miss Freed pulled up to the residence, that's when Mr. Gange counted out the money to Tina Twogood"; (5) Miss Twogood went out and exchanged the money with Freed for methamphetamine and gave it to Gange; and (6) "After Mr. Gange got the methamphetamine, Miss Twogood asked—asked him if—if he was interested in getting some more. She could possibly get 5 more grams from Freed in approximately an hour. They wanted to meet back up with her."

[¶ 7] Benjamin Gange, a paid informant, testified: (1) Freed was "a target for [him] as a paid informant"; (2) Early on the afternoon of October 14, 1997, he "stopped at Twogood's house, tried to get a hold of Mary, and Mary wasn't around, so I had them get a hold of her and have her around so when I stopped back later she would have the methamphetamine on her"; (3) He "ask[ed] the Twogoods to contact Miss Freed ... [t]o get some methamphetamine from her"; (4) On October 14th, he gave Tina Twogood money to buy two grams of methamphetamine; (5) He "observed Mary [Freed] pull up.... Tina handed the money off to Mary. Mary handed methamphetamine to her"; (6) Tina Twogood "said if I wanted more, she said I could come back later, and she would stop back;" (7) Tina Twogood said,

"Mary would stop back later. She had to go and get more"; and (8) He went to Mike Gress's house on October 15th, Freed was there, and Freed indicated they had five grams left.

[¶ 8] In accordance with *Serr*, the trial court instructed the jury: "However, proof of a buyer-seller relationship without more is not sufficient to prove a conspiracy." There was evidence from which the jury could reasonably infer Freed and Tina Twogood had an arrangement in which Twogood would act as a conduit to get the methamphetamine to Gange, both that which was actually delivered, and the "more" that Freed could obtain later. Viewed in the light most favorable to the verdict, "a rational fact finder could have found the defendant guilty beyond a reasonable doubt," *State v. McKing*, 1999 ND 81, ¶ 8, 593 N.W.2d 342. We conclude the evidence was sufficient to sustain Freed's conviction for conspiracy to deliver a controlled substance, methamphetamine, on October 14, 1997.

[¶ 9] Freed also contends the evidence was insufficient to sustain her conviction for delivery of a controlled substance. Benjamin Gange testified he went to Mike Gress's house on October 15, 1997; Freed was there; he "asked how much they had left and told them I would be back to pick it up from them"; and Freed indicated they had five grams left. Gange testified he went back later with "$700 to pay for the 5 grams." Gange further testified:

    Q. All right. Before—after you arrived there, what did you do?

    A. I walked in, had a little talk, and then laid the money out and grabbed them, and stuck it in my pocket. We had small talk. I laid down the money, grabbed the 5 grams from her, counted it out.

    Q. From whom?

    A. From Mary Freed.

    . . . .

Q. And on the 15th of October, 1997, which person present in the apartment did you discuss the price and quantities with?

A. It was a house and Mary Freed. Viewed in the light most favorable to the verdict, we conclude the evidence was sufficient to sustain Freed's conviction for delivery of a controlled substance, methamphetamine, on October 15, 1997.

## II

[¶ 10] Freed contends the trial court erred in not granting her motion for separate trials of the conspiracy and delivery charges. In her brief supporting her motion for separate trials, Freed asserted:

In the present case the facts that need to be established in Count 1 are different and distinct from the facts that need to be establsihed [sic] in Count 2. The elements of the charges in Count 1 and Count 2 are different. The evidence presented in Count 1 will be different from the evidence in Count 2. Furthermore, the state does not have evidence to establish a conviction in Count 2 and there will likely be a dismissal or an acquittal in that count. If Count 2 is dismissed, then the evidence presented for the basis of Count 2 would be irrelevant and immaterial in a separate trial on Count 1. The irrelevant evidence or immaterial evidence would substantially prejudice the Defendant. If separate trials would be held, the evidence in Count 2 would not be allowed in Count 1. The charges are not related except as to allegedly occuring [sic] within two days.

The State responded "the evidence and proof to be offered in each count in this case is very nearly identical, provided by very nearly identical witnesses by the Plaintiff and that there is no practical reason for the separation of these two counts for trial."

[¶ 11] Rules 8 and 14, N.D.R.Crim.P., address joinder of offenses. Rule 8(a), N.D.R.Crim.P., provides:

*(a) Joinder of Offenses.* Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of the common scheme or plan.

Rule 14, N.D.R.Crim.P., provides:

If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecuting attorney to deliver to the court for inspection in camera any statements or confessions made by the defendants which the prosecution intends to introduce in evidence at the trial.

The purpose of N.D.R.Crim.P. 8 is to provide judicial convenience and economy. *State v. Neufeld,* 1998 ND 103, ¶ 12, 578 N.W.2d 536. "The purpose of Rule 14 is to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *State v. Purdy,* 491 N.W.2d 402, 405 (N.D.1992). A decision to consolidate offenses at trial is left to the discretion of the trial court, and we will reverse a trial court's decision only if there is a clear abuse of discretion. *State v. Warmsbecker,* 466 N.W.2d 105, 108 (N.D. 1991). "Under Rule 14, an aggrieved defendant may seek relief from prejudicial joinder," but "has the burden of demonstrating substantial prejudice from a consolidated trial." *Warmsbecker,* 466 N.W.2d at 109. "[T]he defendant's burden

is arduous." *Neufeld,* at ¶ 15. "A mere showing that a separate trial would have provided a better chance of an acquittal will not suffice." *Warmsbecker,* 466 N.W.2d at 109.

[¶ 12] While there are different elements involved in the conspiracy and delivery charges, some of the conduct involved is common to both, and the charges "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of the common scheme or plan." Rule 8(a), N.D.R.Crim.P. We conclude the trial court did not abuse its discretion in denying Freed's motion for separate trials on the two charges.

### III

[¶ 13] Freed contends the tapes of recorded conversations made through a body transmitter worn by Gange were hearsay, irrelevant, and should not have been admitted into evidence. "One of the touchstones for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so it could intelligently rule on it." *State v. Osier,* 1999 ND 28, ¶ 14, 590 N.W.2d 205. Under N.D.R.Ev. 103(a)(1), "[e]rror may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." When the State offered two tape recordings in evidence, Freed's attorney's only response was: "Subject to any previous objection to No. 1 and 2, Your Honor, I imagine that will be noted." Freed's opaque and unilluminating response to the State's offer in evidence was

insufficient to preserve this issue for review.

[¶ 14] Freed asserts in her brief:

> Freed made a motion in limine prior to the trial and objected to the tapes on hearsay grounds. The trial court allowed both tapes. Freed again objected to the offering of the tapes at the trial but the court admitted them.

The record on appeal does not contain a written motion in limine. The transcript of an earlier trial shows Freed objected to testimony about tape-recorded conversations on hearsay grounds, but the trial court ruled the testimony was not hearsay. However, a second trial generally must proceed as if no earlier trial had been held, and rulings in the former trial are not binding on the court in the later trial. *See generally* 66 C.J.S., *New Trial* § 291 (1998); 58 Am.Jur.2d, *New Trial* § 588 (1989). Thus, Freed's objection at the first trial, and the court's ruling, do not carry over to the second trial. By failing to properly object at the second trial, Freed failed to preserve this issue for review unless it is obvious error.[1] We cautiously exercise our power to notice obvious error only in exceptional situations in which a defendant has suffered serious injustice. *State v. Barnett,* 543 N.W.2d 774, 779 (N.D.1996). As in *Barnett,* "[t]his is not such a case." *Id.*

### IV

[¶ 15] Freed contends she had a right to be informed there was a sentence-enhancing mandatory minimum sentence involved, and the information did not specifically advise Freed there was a mandatory minimum sentence if convicted of deliver-

---

1. Decisions like *State v. Metzner,* 244 N.W.2d 215, 226 (N.D.1976) (stating counsel preserved for review his claim evidence was inadmissible when he renewed a pretrial suppression motion at trial and the court reaffirmed its earlier denial of the suppression motion), and *Fisher v. Suko,* 98 N.W.2d 895, 899 (N.D.1959) (stating objections asserted to be insufficiently specific were adequate when the trial court understood the import of the objections), do not compel a different result, as they involved objections at trial, rather than, as here, a reference to an objection at a different trial.

ing methamphetamine within 1,000 feet of school property.[2]

[¶ 16] "[O]ffense-enhancing or sentence-enhancing prior convictions ... must be alleged in the complaint or information or otherwise brought to the attention of a defendant if the State intend[s] to use the prior convictions to enhance either the offense or the sentence upon a subsequent conviction." *City of Fargo v. Bommersbach,* 511 N.W.2d 563, 565 (N.D.1994). Rule 11, N.D.R.Crim.P., "which provides a court may not accept a plea of guilty without first informing the defendant of any statutory mandatory minimum punishment, if any, for the offense ... does not specify such a requirement except for a plea of guilty." *Id.* "For a not guilty plea, due process does not require specific arraignment notification of a mandatory minimum sentence." *Id.*

[¶ 17] Section 19–03.1–23(1)(a)(1), N.D.C.C., provides for a first-time offense of delivery of methamphetamine, one is guilty of a class A felony, and must be sentenced to imprisonment for at least a year and a day. Section 12.1–32–01(2), N.D.C.C., provides a maximum penalty of twenty years' imprisonment, a fine of $10,-000, or both, for a class A felony. Section 19–03.1–23(3)(a), N.D.C.C., says a "person, eighteen years of age or older, who violates this section by willfully ... delivering ... a controlled substance ... within one thousand feet ... of ... a ... school is subject to a four-year term of imprisonment." The statute does not enhance either the penalty or the offense. *Bommersbach* at 565. It merely removes a sentencing court's discretion to sentence a

convicted defendant to less than four years of imprisonment for an offense with a range of up to twenty years of imprisonment.

[¶ 18] Freed moved for an order requiring the State to file a bill of particulars, alleging the information did not specify which subsection she was charged with violating. The State responded:

As to the Motion for Bill of Particulars, the Plaintiff responds that the specific sub-paragraphs of Section 19–03.1–23 of the North Dakota Century Code which are involved in Count 1 are sub-paragraph 1(a) and sub-paragraph 3. These particular sub-paragraphs involve the mandatory minimum penalties for Delivery of Methamphetamine and for Delivery of Controlled Substance Within 1000 Feet of School Real Estate.

In Count 2 of the same Criminal Information the specific part of N.D.C.C. 19–03.1–23 which is involved is sub-paragraph 1(a) which speaks to Delivery or Possession With Intent to Manufacture or Deliver Methamphetamine and the minimum mandatory penalty.

Thus, the State advised Freed one of the provisions involved was N.D.C.C. § 19–03.1–23(3), which provides anyone eighteen years of age or older who delivers a controlled substance within 1,000 feet of school property is subject to a minimum four-year term of imprisonment.

[¶ 19] Freed contends the mandatory minimum sentence provision cannot be applied if the statutory language was not included in the jury instructions, and contends a defendant is entitled to a jury determination on the factual issues con-

**2.** Section 19–03.1–23(3)(a), N.D.C.C., provides:

In addition to any other penalty imposed under this section, a person who violates this chapter ... is subject to, and the court shall impose, the following penalties to run consecutively to any other sentence imposed:

a. Any person, eighteen years of age or older, who violates this section by willfully manufacturing, delivering, or possess-

ing with intent to manufacture or deliver a controlled substance in or on, or within one thousand feet [300.48 meters] of the real property comprising a public or private elementary or secondary school or a public vocational school is subject to a four-year term of imprisonment. For a second or subsequent offense, the sentencing term required to be imposed must be eight years.

tained in N.D.C.C. § 19–03.1–23(3)(a). When the prosecutor attempted to prove Freed delivered methamphetamine within 1,000 feet of a school through testimony by Sergeant Stenberg of the Dickinson Police Department, Freed's attorney objected to its presentation to the jury and said it could be addressed at sentencing:

> MR. SENN: Objection, Your Honor. That's irrelevant.
>
> . . . .
>
> MR. SENN: The jury doesn't have anything to do with the sentencing. That is strictly in the discretion of the Judge, and I think you know that's under the sentencing guidelines, so it has nothing to do with the jury trial, and the jury has nothing to do with sentencing, so I would say it's not relevant for purposes of this trial. That can be brought up at the sentencing, of course.
>
> THE COURT: So you're in agreement we can argue about that at sentencing?
>
> MR SENN: Certainly.

After succeeding in preventing the prosecutor from presenting evidence to the jury on the distance Freed's drug delivery took place from a school, and agreeing it could be argued at sentencing, Freed will not be heard to complain about a lack of evidence, instructions, or a jury determination on the issue. If Freed's attorney's objection to evidence about the distance of the delivery from a school and agreement it could be argued at sentencing, was a "deliberate trial tactic designed to 'sandbag' the judicial process, [it] will not be tolerated by this court." *State v. Trieb,* 315 N.W.2d 649, 655 n. 8 (N.D.1982). If the trial court erred on this matter, it was an error invited by Freed's attorney, which, as we recently recognized in *State v. Hill,* 1999 ND 26, ¶ 21, 590 N.W.2d 187, is not reversible.

## V

[¶ 20] The verdicts and judgment are affirmed.

[¶ 21] VANDE WALLE, C.J., MARING, NEUMANN and SANDSTROM, JJ., concur.