2000 ND 32

**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**Eduardo Miguel GONZALEZ, a/k/a Edwardo Gonzalez, Defendant and Appellant.**

**No. 990257.**

Supreme Court of North Dakota.

Feb. 22, 2000.

Brett M. Shasky, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Douglas W. Nesheim of Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Eduardo Miguel Gonzalez appeals from a criminal judgment and commitment finding him guilty of conspiracy to deliver a controlled substance. Because the district court erred in denying Gonzalez's N.D.R.Crim.P. 29 motion for judgment of acquittal, we reverse his conviction.

I

[¶ 2] An informant for the North Dakota Bureau of Criminal Investigation telephoned Gonzalez three or four times, attempting to set up a drug transaction. The informant testified Gonzalez agreed to meet him to sell him an "eight ball," or one-eighth ounce of cocaine. According to Gonzalez, the informant never directly stated what he wanted, but said "let's play some eight ball."

[¶ 3] Gonzalez testified he agreed to meet the informant in order to tell him not to call any more, because the informant was not getting the message over the telephone. Specifically, he testified he wanted to punch the informant "because [the informant] was calling me and disturbing my house." The two agreed to meet at the Petro truck stop in Fargo between 7:00 and 8:00 p.m. on May 18, 1999.

[¶ 4] On the evening of May 18, 1999, the informant was wired with a body transmitter and positioned in the Petro parking lot. Special Agent Brent Slade, Sergeant Steve Lynk, and Detective Tammy Lynk of the Fargo Police Department were parked across from Petro in separate cars at the McDonald's parking lot and at the Amoco station. The officers wore plain clothes and drove unmarked vehicles.

[¶ 5] Detective Lynk observed Gonzalez pull into the McDonald's parking lot. Gonzalez parked three parking spots to the right of Detective Lynk. She glanced over at Gonzalez several times and noticed he was looking in her direction. Detective Lynk testified she believed Gonzalez had identified her as a police officer because he had smiled and waved at her.

[¶ 6] Gonzalez then drove to the Amoco parking lot. Sergeant Steve Lynk was parked on the west side of the lot. Gonzalez pulled into a parking spot close to Sergeant Lynk. Sergeant Lynk made eye contact with Gonzalez, who then "squealed out" of the parking spot in reverse, drove out of the parking lot through one driveway, reentered the parking lot through another driveway, and pulled up next to a vacuum cleaner on the east side of the parking lot. Gonzalez got out of his car and used the vacuum cleaner for forty-five seconds to one minute. Sergeant Lynk testified he did not see Gonzalez reach anywhere in his car or stuff anything into the vacuum cleaner.

[¶ 7] Gonzalez then drove over to Petro and pulled up next to the informant. Gonzalez said something like, "I thought you wanted to play pool." Gonzalez then told the informant never to call him again and to tell his friends not to call him again.

[¶ 8] Gonzalez left Petro and was arrested a few blocks away. After the stop,

Gonzalez, his vehicle, and the vacuum cleaner at Amoco were searched.

[¶ 9] Reno, a police dog trained to alert police to present or past drug contamination, was brought in during the search. Reno alerted the officers to the presence of something in three places in the car and at the vacuum cleaner. The search revealed no cocaine or drug-related materials.

[¶ 10] Officer Patrick Claus testified Reno indicates "at some point something may have been" at locations that Reno identifies and Officer Claus cannot pinpoint when the drugs may have been there. Officer Claus stated Reno's identification alone is inconclusive and is usually substantiated either by actually finding the controlled substance or by "supporting testimony or evidence" to "demonstrate that the drugs were there prior to his inspection."

[¶ 11] Gonzalez was charged with conspiracy to deliver a controlled substance, and a jury trial was held on August 3 and 4, 1999. Prior to the presentation of the defense, Gonzalez moved the court under N.D.R.Crim.P. 29 for a judgment of acquittal. He also moved to exclude evidence of his 1997 conviction for intent to deliver cocaine. The district court denied both motions.

[¶ 12] The jury found Gonzalez guilty of conspiracy to deliver a controlled substance. He timely appealed. N.D.R.Crim.P. 37(b); N.D.R.App.P. 4(b). The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 29–28–06.

## II

[¶ 13] The main issue in this case is whether the district court erred in denying Gonzalez's N.D.R.Crim.P. 29 motion, because there was insufficient evidence to find him guilty beyond a reasonable doubt of the crime of conspiracy to deliver a controlled substance. Because we conclude the district court erred in denying his N.D.R.Crim.P. 29 motion, we need not address Gonzalez's remaining arguments on appeal.

## A

[¶ 14] In deciding a motion for judgment of acquittal, the district court, upon reviewing the evidence most favorable to the prosecution, "must deny the motion if there is substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *State v. Hafner*, 1998 ND 220, ¶ 21, 587 N.W.2d 177 (citations omitted). On appeal, to successfully challenge the sufficiency of the evidence, the defendant must show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *Id.*

[¶ 15] When ruling on a motion for judgment of acquittal under Rule 29, N.D.R.Crim.P., the district court must assume the truth of the evidence supporting the State's case and then decide whether a reasonable person would be justified in concluding from this evidence that all the elements of the crime have been established beyond a reasonable doubt. *State v. Morris*, 331 N.W.2d 48, 55 (N.D.1983) (citing *State v. Holy Bull*, 238 N.W.2d 52 (N.D.1975); *State v. Allen*, 237 N.W.2d 154 (N.D.1975)). To grant a judgment of acquittal, a district court must find the evidence is insufficient to sustain a conviction of the offenses charged. *State v. Delaney*, 1999 ND 189, ¶ 4, 601 N.W.2d 573 (citations omitted).

## B

[¶ 16] Under N.D.C.C. § 12.1–06–04(1), "[a] person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, consti-

tutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy."

[¶ 17] An agreement to commit a conspiracy "need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances." N.D.C.C. § 12.1–06–04. *See State v. Serr,* 1998 ND 66, ¶ 13, 575 N.W.2d 896. Proof of a buyer-seller relationship in itself is not enough to prove a conspiracy to deliver a controlled substance. *Serr,* at ¶ 13. The "something more" required is an understanding between the buyer and seller, often implicit, relating to the subsequent distribution by the buyer. *Id.* Without more, evidence that a buyer was reselling the substance is insufficient. *State v. Freed,* 1999 ND 185, ¶ 5, 599 N.W.2d 858 (citations omitted). The parties must have contemplated the resale of the narcotics at the time of the conspiratorial agreement, and the resale must have been part of the "conspiratorial agreement." *Serr,* at ¶ 13; *Freed,* at ¶ 5. A defendant's intent may be established by circumstantial evidence, and "possession of a controlled substance can be an overt act indicating conspiracy to deliver a controlled substance." *Freed,* at ¶ 5 (citations omitted).

[¶ 18] Viewing the evidence in the light most favorable to the State, Gonzalez agreed to meet the informant at Petro to sell him cocaine. The overt act charged in this case was that Gonzalez met the informant at the time and location of the anticipated transaction. One of the officers testified she believed Gonzalez had identified her as a police officer, which may have caused the drug transaction to fall through.

[¶ 19] There was no evidence presented, however, that Gonzalez and the informant contemplated the resale of the cocaine at the time of the conspiratorial agreement, or that the resale was part of the "conspiratorial agreement." There was no evidence that the informant was going to resell the drugs, that the informant discussed the resale of the drugs with Gonzalez, that he agreed with Gonzalez to distribute the drugs, or that Gonzalez believed the drugs would be resold. In addition, neither the amount of drugs the informant testified would be sold by Gonzalez nor the past pattern of dealings between Gonzalez and the informant was sufficient to infer that resale was contemplated. Under *Serr,* such a showing is required to prove a conspiracy to deliver a controlled substance. 1998 ND 66, 575 N.W.2d 896.

[¶ 20] Viewing the record in the light most favorable to the verdict, we conclude there is insufficient evidence to sustain Gonzalez's conviction. As such, the district court abused its discretion in denying Gonzalez's N.D.R.Crim.P. 29 motion for judgment of acquittal.

### III

[¶ 21] The judgment of conviction is reversed, and the case is remanded for entry of a dismissal with prejudice.

[¶ 22] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.