NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1373                                       Appeals Court

COMMONWEALTH  vs.  PAMELA DOTY.

No. 14-P-1373.

Middlesex.     June 9, 2015. - September 3, 2015.

Present:  Sullivan, Maldonado, & Massing, JJ.

Controlled Substances.  Conspiracy.  Evidence, Conspiracy.

Indictment found and returned in the Superior Court
Department on March 30, 2010.

The case was tried before John T. Lu, J.

Edward Crane for the defendant.
Kerry A. Collins, Assistant District Attorney, for the
Commonwealth.

SULLIVAN, J.  After a jury trial, Pamela Doty was convicted

of conspiring to distribute cocaine in violation of the

Controlled Substances Act, see G. L. c. 94C, § 40, and failing

to identify herself while operating a motor vehicle.  See G. L.

c. 90, § 25, as amended through St. 1989, c. 341, § 114.[1]  She

_____

[1] The Commonwealth filed a nolle prosequi as to a charge of
operating a motor vehicle with a suspended license.  See G. L.

appeals from the conspiracy conviction, contending that the evidence, while indicative of a buyer-seller transaction, was insufficient to show that she agreed to distribute cocaine.  We conclude that the evidence of conspiracy to distribute was insufficient, and that the conspiracy conviction must be reversed.

Background.  This case arises out of an undercover investigation conducted by the Marlborough police department.  We set forth the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

At the request of Marlborough police Detective Manning, Brian Hart, a civilian "undercover police operative," contacted Jonathan Wright,[2] the defendant's alleged coconspirator, to buy cocaine.  Wright said he could arrange the purchase of cocaine for Hart, but that Hart would have to wait one-half hour since the seller was leaving a hospital and needed time to get to the meeting place.  After speaking with Wright, Hart contacted

_____

c. 90, § 23.  The jury acquitted the defendant of distribution of cocaine.  See G. L. c. 94C, § 32A(c).

[2] Wright was tried separately.

Detective Manning, who gave Hart a police department undercover car, $100 in cash, and a "wire"[3] for use during the buy.

Hart drove to Wright's residence in Northborough on Wright's instructions. Once there, Wright got into Hart's car and they drove to the Olive Garden restaurant in Marlborough. Hart parked the car outside of the restaurant and Wright made a telephone call. Hart heard Wright refer to "Pam," but could not hear the conversation.

A few minutes later, a red Ford F-150 pickup truck (truck) pulled up behind Hart's car in the restaurant parking lot; Wright told Hart that this was the person for whom they were waiting. Hart could not see who was in the truck since it was behind him and higher than his car. Detective Manning, who had been conducting surveillance in the parking lot in an unmarked car, saw the driver of the truck, later identified as the defendant, as she drove by. She was the only person in the truck.

Hart gave Wright $100 for "two fifties," that is, two fifty dollar bags of cocaine, each weighing one-half gram, an amount described by one of the detectives as a street-level sale.

---

[3] A wire was described as "an electronic transmitting device [that] allows the investigators involved in the investigation to hear the conversation ongoing between the undercover and any potential dealers." The wire did not record.

There was evidence that Hart had purchased drugs from Wright in the past, but no evidence that the defendant had been involved.

Wright got out of Hart's car, approached the truck, and got in. The truck pulled forward into a parking spot approximately fifteen feet behind Hart's vehicle. Neither Hart nor Detective Manning were able to see what took place inside the truck. Wright returned to Hart's car shortly thereafter, stated, "[W]e're all set," and handed two bags of a white substance to Hart. There was no evidence as to what happened to the cash Hart gave to Wright. "Two clear plastic knotted bags containing a white chunk-like substance" were later turned over to Detective Manning. Testing confirmed the bags contained cocaine.

Detective Manning followed the truck as it left the restaurant parking lot and pulled into the parking lot at a hospital. The defendant entered the hospital, came out "less than a minute" later, and drove away in the truck. Shortly thereafter, at the request of Detective Manning, Officer Hassapes stopped the truck for a civil motor vehicle infraction. The defendant gave Officer Hassapes the truck's registration, but told him that she did not have her license; she gave him her sister's name and date of birth. Detective Manning also approached the truck, and recognized the defendant, in the driver's seat, as the driver of the truck from the Olive Garden

parking lot. Detective Manning ran a query in the registry of motor vehicles system for Pamela Doty, which produced a picture of the defendant. At trial, both Officer Hassapes and Detective Manning identified the defendant as the driver of the truck.

The parties stipulated that there was no evidence that Wright had purchased drugs from the defendant in the past, and the jury were so instructed at trial. When the prosecutor referred to the defendant as a "drug dealer" during her closing argument, the judge further instructed the jury that the parties agreed that the defendant was not charged with any other offense and that "[t]he use of the term 'drug dealer' was a slip of the tongue . . . not to be considered by" the jury.

The indictment alleged that the defendant and Wright conspired to distribute cocaine under G. L. c. 94C, § 40.[4] The conspiracy charge and a distribution charge (of which the defendant was acquitted) were tried together without objection. But see Mass.R.Crim.P. 9(e), 378 Mass. 861 (1979). The Commonwealth's theory of the case was that the defendant, the seller, had entered into an agreement with Wright, the

---

[4] General Laws c. 94C, § 40, inserted by St. 1971, c. 1071, § 1, provides:

"Whoever conspires with another person to violate any provision of this chapter shall be punished by imprisonment or fine, or both, which punishment shall not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy."

middleman, to distribute cocaine to Hart.  However, the judge instructed more broadly, stating that in order to prove a conspiracy to distribute, "the Commonwealth must prove beyond a reasonable doubt that the defendant joined in an agreement or plan with one or more other persons . . . to do something unlawful."

Discussion.  The Controlled Substances Act, see G. L. c. 94C, does not define the term "conspiracy" in the context of a conspiracy to distribute.  In divining the Legislature's intent, we look to the relevant precedent under the Federal statute upon which c. 94C was based, our established and developing common law of conspiracy,[5] see Commonwealth v. Cass, 392 Mass. 799, 801 (1984); Commonwealth v. Colon, 431 Mass. 188, 191 (2000), and the statutory scheme as a whole.

The defendant urges us to adopt the Federal courts' interpretation of the analogous Federal statute's meaning of an agreement to distribute in the context of a conspiracy to

---

[5] In Massachusetts, conspiracy is a common-law crime defined as "the unlawful agreement . . . to do an unlawful act, or . . . a lawful act for unlawful purposes." Commonwealth v. Cantres, 405 Mass. 238, 240 (1989), quoting from Commonwealth v. Soule, 6 Mass. App. Ct. 973, 973-974 (1979).  While no overt act is required to prove conspiracy, "[t]he Commonwealth must prove . . . 'that the defendants combined with the intention to [commit the object crime].'" Id. at 244, quoting from Commonwealth v. Zakas, 358 Mass. 265, 269 (1970).  See Commonwealth v. Pratt, 407 Mass. 647, 653-654 (1990).  Here, the object of the alleged conspiracy was the distribution of cocaine.

distribute a controlled substance under G. L. c. 94C, § 40.
Because the defendant did not raise this argument below in her
motion for a required finding, we review for error and, if there
was error, for a substantial risk of miscarriage of justice.
Commonwealth v. Bell, 455 Mass. 408, 411 (2009).  We address a
far narrower question, that is, on the facts presented, whether
the evidence of this single buyer-seller transaction, without
more, was sufficient to prove a conspiracy to distribute.  We
conclude that it was not.

1.  Parameters of a conspiracy to distribute.  The
indictment here alleged, in relevant part, that the defendant
and Wright conspired to distribute cocaine in violation of G. L.
c. 94C, § 40.  The indictment and the judge's instructions were
susceptible to two different interpretations as to the nature of
the conspiracy.  The first interpretation is that there was a
conspiracy between A (the defendant) and B (Wright) because they
agreed that A would sell cocaine to B, and that B would buy it.
The evidence in this case of a single buyer-seller transaction
in which the defendant was the seller and Wright was the buyer
was sufficient to prove a sale from A to B; Wright set up the
deal, took the money to the defendant, and returned with drugs.
If a single buyer-seller transaction between A and B is
sufficient to prove the agreement underlying a conspiracy, the

evidence here is sufficient.[6]  However, as discussed more fully

below, this proposition has been consistently rejected by

Federal and State appellate courts interpreting analogous

statutes.

The second interpretation is that the Commonwealth must

prove that A (the defendant) and B (Wright) entered into an

agreement to distribute to C, a third party or parties (here

Hart).  This is the theory that was argued to the jury.  The

defendant maintains that, as a matter of law, the statute

requires that there be some evidence of a knowing and purposeful

agreement to enter into a chain of distribution.  The defendant

further contends that the evidence here, which consisted of a

single sale, is insufficient because there was nothing about the

sale that indicated that the defendant knew, much less agreed or

intended, that Wright would further distribute the cocaine to

another person or persons.  Thus, the defendant contends, the

Commonwealth failed to prove that the defendant and Wright

entered into an agreement to distribute a controlled substance.

---

[6] The judge's instructions would have permitted the jury to convict on this basis.  With respect to distribution, the judge instructed as follows:  "The term 'distribute' means to actually deliver a controlled substance to another person other than by legally administering or dispensing it. . . .  Distribution includes all forms of physical transfer. . . .  To distribute means . . . to hand over to another or to give away or transfer ownership from one person to another."

Our cases have not squarely addressed whether a single buyer-seller transaction, without more, constitutes a conspiracy to distribute.[7]  In interpreting the Controlled Substances Act, the Supreme Judicial Court has, however, looked to the evolving case law under the closely analogous Comprehensive Drug Abuse Prevention and Control Act of 1970 (Federal statute), on which G. L. c. 94C is modeled.  See 21 U.S.C. §§ 801, 846;[8] Commonwealth v. Cantres, 405 Mass. 238, 240 (1989); Commonwealth v. Brown, 456 Mass. 708, 716 (2010).  We therefore look to the

_____

[7] In Cantres, 405 Mass. at 242-243, the Supreme Judicial Court held that Wharton's Rule did not bar the defendant's conviction of conspiracy to distribute controlled substances, even though the facts of the case were such that only two people were involved in the conspiracy and the sale.  The court held that since conspiracy requires the showing of an agreement, the elements of conspiracy are different from the elements of the substantive offense.  Id. at 243-244.  In Cantres the parties did not argue, and the court did not reach, the precise issues presented here, namely whether there was an agreement, and whether the Legislature intended to subject the buyer and the seller to the penalties for conspiracy to distribute in the absence of proof of an agreement to sell to others.

[8] The Uniform Controlled Substances Act, adopted by Massachusetts and most other States, is based on the Federal statute.  See Commonwealth v. Brown, 456 Mass. 708, 716 (2010); Commonwealth v. Kobrin, 72 Mass. App. Ct. 589, 595 n.6 (2008).  Section 846 of the Federal statute provides:

"Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Federal cases, which, though not controlling, are instructive. See Commonwealth v. Brown, supra.

2. Federal cases. "As a result of the long running 'war on drugs' waged by the federal government," State v. Allan, 311 Conn. 1, 13 (2014) (Allan), all twelve circuits of the United States Courts of Appeal have addressed the sufficiency of the evidence in drug distribution conspiracies. All have held that evidence of a buyer-seller relationship, without more, does not constitute a conspiracy to distribute a controlled substance.[9] As State appellate courts have grappled with the application of conspiracy law to drug distribution prosecutions, they have also held, relying on the Federal cases, that evidence of a buyer-seller relationship, without more, is insufficient to support a

---

[9] See United States v. Boidi, 568 F.3d 24, 30 (1st Cir. 2009); United States v. Parker, 554 F.3d 230, 234-236 (2d Cir.), cert. denied sub nom. Baker v. United States, 558 U.S. 965 (2009); United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999), cert. denied, 528 U.S. 1131 (2000); United States v. Mills, 995 F.2d 480, 485 (4th Cir.), cert. denied, 510 U.S. 904 (1993); United States v. Delgado, 672 F.3d 320, 333 (5th Cir.), cert. denied, 133 S. Ct. 525 (2012); United States v. Deitz, 577 F.3d 672, 680 (6th Cir. 2009), cert. denied, 559 U.S. 984 (2010); United States v. Johnson, 592 F.3d 749, 754 (7th Cir. 2010); Unites States v. Brown, 726 F.3d 993, 998-999 (7th Cir. 2013); United States v. Donnell, 596 F.3d 913, 924-925 (8th Cir. 2010), cert. denied, 562 U.S. 1181 (2011); United States v. Lennick, 18 F.3d 814, 819 (9th Cir.), cert. denied, 513 U.S. 856 (1994); United States v. Ivy, 83 F.3d 1266, 1285-1286 (10th Cir.), cert. denied sub nom. Hickman v. United States, 519 U.S. 901 (1996); United States v. Bacon, 598 F.3d 772, 776 (11th Cir. 2010); United States v. Baugham, 449 F.3d 167, 171-172 (D.C. Cir.), cert. denied sub nom. Wells v. United States, 549 U.S. 966 (2006).

conviction of conspiracy to distribute controlled substances.[10] As the Connecticut Supreme Court has pointed out, see id. at 15, the Federal cases rely on two distinct lines of reasoning. The first centers on the nature of the agreement, the second on legislative intent.

a. Nature of the agreement. One group of appellate courts holds that "in a buyer-seller relationship, there is no singularity of purpose and thus no meeting of the minds. . . . 'In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell.' United States v. Donnell, [596 F.3d 913, 924-925 (8th Cir. 2010)]; see United States v. Brown, [726 F.3d 993, 1001 (7th Cir. 2013)] ('People in a buyer-seller relationship have not agreed to advance further distribution of drugs; people in conspiracies have. That agreement is the key.'). Accordingly, a mere buyer-seller relationship lacks an essential element necessary to form a conspiracy." Allan, supra. See, e.g., United States v. Moran, 984 F.2d 1299, 1303

---

[10] See State v. Allan, supra; Heckstall v. State, 120 Md. App. 621, 625-627 (Ct. Spec. App. 1998); People v. Justice, 454 Mich. 334, 335-336 (1997); State v. Pinkerton, 628 N.W.2d 159, 162-163 (Minn. Ct. App. 2001); State v. Serr, 575 N.W.2d 896, 899 (N.D. 1998); State v. Gonzalez, 606 N.W.2d 873, 876 (N.D. 2000); State v. Gunn, 313 S.C. 124, 133-134 (1993); State v. Horne, 324 S.C. 372, 381 (Ct. App. 1996); Reed v. Commonwealth, 213 Va. 593, 594 (1973); Zuniga v. Commonwealth, 7 Va. App. 523, 528-529 (1988); State v. Smith, 189 Wis. 2d 496, 502-504 (1995); State v. Cavallari, 214 Wis. 2d 42, 48-50 (Ct. App. 1997). Cf. People v. Stroud, 392 Ill. App. 3d 776, 799-802 (2009).

(1st Cir. 1993).[11] These courts define a conspiracy to distribute to mean that there must be an agreement between A and B to sell to C.

These cases also rely in part[12] on the principle that mere knowledge of or acquiescence in the conspiracy to distribute is not sufficient to satisfy the intent element of the crime. See, e.g., United States v. Parker, 554 F.3d 230, 235-236 (2d Cir.), cert. denied sub nom. Baker v. United States, 558 U.S. 965 (2009); United States v. Ivy, 83 F.3d 1266, 1285-1286 (10th Cir.), cert. denied sub nom. Hickman v. United States, 519 U.S. 901 (1996). Our general common law of conspiracy likewise requires a showing of more than mere knowledge or acquiescence; intent to enter the agreement to commit the crime is also required. See Commonwealth v. Beal, 314 Mass. 210, 222 (1943); Commonwealth *v.* Camerano, 42 Mass. App. Ct. 363, 366 (1997); Commonwealth v. Melanson, 53 Mass. App. Ct. 576, 580-581 (2002).

b. Legislative intent. Some cases also reason "that, under the common-law definition of conspiracy, 'when a buyer purchases illegal drugs from a seller, two persons have agreed to a concerted effort to achieve the unlawful transfer of the

---

[11] To the extent that the Federal cases appear to adopt the reasoning embodied in Wharton's Rule, however, that line of reasoning was expressly rejected in Cantres, 405 Mass. at 242-243, and we do not rely on them in that respect. See note 7, supra.

[12] See note 11, supra.

drugs from the seller to the buyer. . . .  [This] would constitute a conspiracy with the alleged objective of a transfer of drugs.' . . .  United States v. Parker, supra, 554 F.3d at 234; see United States v. Delgado, [672 F.3d 320, 333 (5th Cir.), cert. denied, 133 S. Ct. 525 (2012)]."  Allan, supra at 15.  These cases appear to recognize a possible conspiracy between A and B to sell to B.  Contrast Cantres, 405 Mass. at 242-243.  However, they go on to carve out a far narrower definition of a conspiracy to distribute.

"[T]hese courts further reason that Congress did not intend to subject buyers, particularly addicts, who purchase drugs for personal use, to the severe liabilities intended for distributors. . . .  United States v. Delgado, supra, at 333 ('[t]he rule shields mere acquirers and street-level users, who would otherwise be guilty of conspiracy to distribute, from the more severe penalties reserved for distribut[o]rs')."  Allan, supra at 15-16.  Therefore, these Federal appellate courts conclude, as a matter of legislative intent, that a conspiracy must involve something more than a simple buyer-seller transaction.  See, e.g., United States v. Ivy, supra; United States v. Parker, supra at 235.  Accord State v. Pinkerton, 628 N.W.2d 159, 162-163 (Minn. Ct. App. 2001); State v. Smith, 189 Wis. 2d 496, 502-504 (1995).

As previously noted, our State statute is modelled on the Federal statute.  See Commonwealth v. Brown, 456 Mass. at 716; Commonwealth v. Kobrin, 72 Mass. App. Ct. 589, 595 n.6 (2008). "We [likewise] interpret a statute 'according to the intent of the Legislature ascertained from all its words . . . to the end that the purpose of its framers may be effectuated.'" Commonwealth v. Wynton W., 459 Mass. 745, 747 (2011), quoting from Commonwealth v. Deberry, 441 Mass. 211, 215 (2004).  See Hanlon v. Rollins, 286 Mass. 444, 447 (1934).  The Controlled Substances Act, G. L. c. 94C, from its inception in 1971, has provided different penalties for the crime of possession and the crime of distribution.  See St. 1971, c. 1071, §§ 32, 34.[13]  The seller is exposed to a greater penalty than the buyer.

However, a person charged with conspiracy to distribute is punishable in accordance with the penalties imposed on a

---

[13] Currently, simple possession of cocaine is punishable by incarceration for up to one year, or a fine of not more than $1,000, or both.  G. L. c. 94C, § 34.  By contrast, the crime of distribution of cocaine carries with it a sentence of up to ten years in State prison or two and one-half years in a jail or house of correction, or a fine of $1,000 to $10,000, or both if charged under G. L. c. 94C, § 32A(a).  If charged with distribution under G. L. c. 94C, § 32A(c), the defendant may be sentenced to not less than two and one-half years nor more than ten years in State prison, or to imprisonment in a jail or house of correction for not less than one nor more than two and one-half years, and a fine of not less than $1,000 or more than $10,000.  A repeat offender convicted of distribution of cocaine may be sentenced to no less than three and one-half years and no more than fifteen years; a fine of not less than $2,500 and not more than $25,000 may be imposed.  G. L. c. 94C, § 32A(d).

distributor, see G. L. c. 94C, § 40, and "the seller and buyer would, as coconspirators, be subject to the same penalty." State v. Pinkerton, supra at 163. If a one-time, street-level, buyer-seller transaction by A to B constituted a conspiracy between A and B to sell to B, the street-level addict would be subject to the same penalties as a distributor. This is clearly contrary to the intent of the statute, which contains graduated penalties based on the fundamental distinction between possession and distribution.

3. Sufficiency of the evidence. The foregoing analysis of the nature of the agreement and the structure of the statutory scheme as a whole illuminates the legislative intent to define a conspiracy to distribute in a manner tailored, with specificity, to the crime of drug distribution. We conclude that proof of this single buyer-seller transaction (here A to B, the defendant to Wright) is insufficient to prove a conspiracy to distribute, because of the absence of evidence that the defendant agreed with Wright to distribute to others. See, e.g., United States v. Izzi, 613 F.2d 1205, 1210 (1st Cir. 1980).[14]

---

[14] In Izzi, the amount sold was significantly higher. Under the United States Court of Appeals for the First Circuit's interpretation of the buyer-seller rule, a single sale, even of a significant quantity, is not sufficient to prove conspiracy. That issue is not presented here and we do not decide it. See Commonwealth v. Sendele, 18 Mass. App. Ct. 755, 758 (1984) (reserving question). Likewise, we do not address those

"[I]t must be shown that the defendant was aware of the objective of the conspiracy which was alleged." Commonwealth v. Nelson, 370 Mass. 192, 196 (1976). Nothing in the record suggests the defendant knew of, much less agreed to, the distribution of the drugs to Hart or others. See Commonwealth v. Beal, 314 Mass. at 222 ("mere knowledge of an unlawful conspiracy is not sufficient to make one a member of it"). Compare Commonwealth v. Rose, 84 Mass. App. Ct. 910, 911 (2013). There also is no evidence that the amount in question was so significant as to permit the inference of further distribution. See Commonwealth v. Sendele, 18 Mass. App. Ct. 755, 758 (1984) (Kaplan, J.) (quantity of drugs sold may permit an inference of distribution; reserving question whether quantity alone may be sufficient). Cf. Commonwealth v. Sepheus, 468 Mass. 160, 165 (2014) (0.4 grams of cocaine insufficient to support conviction of possession with intent to distribute); Commonwealth v. Acosta, 81 Mass. App. Ct. 836, 840-841 (2012) (same, 3.16 grams of cocaine). There is no evidence of business dealings between the defendant and Wright other than a single sale, and the jury were so instructed on two different occasions. Compare Commonwealth v. Stoico, 45 Mass. App. Ct. 559, 562 (1998). In sum, there is no suggestion here of an ongoing business

circumstances in which the sale of small quantities of drugs would support a conspiracy to distribute.

arrangement, the amounts were small, and there is no evidence that the defendant knew of Wright's plans to sell the drugs and agreed to sell to Wright based on a shared understanding of further distribution.[15] "A single sale of drugs without more does not establish a conspiracy." United States v. Izzi, supra.[16]

The defendant has urged us to define the circumstances in which a sale would constitute a conspiracy by explicitly adopting the Federal buyer-seller rule. In particular, the defendant asks us to adopt the rationale of the United States Court of Appeals for the Seventh Circuit regarding the proof required to show the element of agreement in a conspiracy to distribute controlled substances. Because there are no facts in the record that would permit a jury to find beyond a reasonable doubt that the defendant knew of and agreed to the distribution of cocaine to Hart, there is no basis to find an agreement to distribute, regardless of the legal standard employed.[17]

---

[15] The Commonwealth points to the fact that the defendant gave a false name as consciousness of guilt. This evidence does permit the inference of guilt regarding the possession or sale of the cocaine, but giving a false name does not tend to show that the defendant formed an agreement to enter into a conspiracy to distribute controlled substances.

[16] See note 14, supra.

[17] We therefore do not address the quantum of proof to show an agreement to distribute beyond that articulated by our existing cases. Some State and Federal appellate courts state

Conclusion.  For these reasons, we conclude that the evidence was insufficient to prove a conspiracy to distribute cocaine.  "[F]indings based on legally insufficient evidence are inherently serious enough to create a substantial risk of miscarriage of justice."  Commonwealth v. Bell, 455 Mass. at 411-412 (quotation omitted).  The conviction on the charge of conspiracy to distribute cocaine is reversed and the verdict is set aside.

So ordered.

---

explicitly that knowledge of resale alone does not necessarily establish an agreement to enter into a narcotics distribution conspiracy.  See, e.g., United States v. Hawkins, 547 F.3d 66, 77 (2d Cir. 2008); State v. Gonzalez, 606 N.W.2d at 876; Zuniga v. Commonwealth, 7 Va. App. at 528-529.  Several jurisdictions look to multiple factors, including but not limited to:  "sales on credit or consignment; United States v. Hawkins, supra, 547 F.3d at 75; large quantities of drugs; United States v. Yearwood, 518 F.3d 220, 226 (4th Cir.), cert. denied, 555 U.S. 861 . . . (2008); multiple transactions; United States v. Becker, 534 F.3d 952, 957-958 (8th Cir. 2008); standardized dealings; United States v. Hawkins, supra, at 74; a level of mutual trust; id.; and the continuity of the relationship between the parties.  United States v. Deitz, supra, 577 F.3d at 681."  Allan, 311 Conn. at 20.  The United States Court of Appeals for the Seventh Circuit requires evidence such as proof of sales on commission or consignment, an agreement to warn of future threats, or payment of commission on sales in addition to a standardized, regularized wholesale buyer-seller relationship. See United States v. Johnson, 592 F.3d at 755-756.  None of these factors is present here.  As noted above, these cases are informative but not controlling.