Following a jury-waived trial, the defendant, Allen Wood, was convicted of possession with intent to distribute a class B substance, in violation of G. L. c. 94C, § 32A(a ), and conspiracy to violate the drug laws, in violation of G. L. c. 94C, § 40. On appeal, the defendant claims that trial counsel was ineffective for failing to move for a required finding of not guilty at the close of the Commonwealth's evidence. We affirm.
Background. The evidence, considered in the light most favorable to the Commonwealth, permitted the trial judge to find the following facts. See Commonwealth v. Penn, 472 Mass. 610, 618 (2015). See also Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). On July 19, 2013, Detective Robert Lewis and other members of the Framingham police department executed a search warrant at 26 Willis Street, Apartment 34, Framingham, for evidence relating to the distribution of crack cocaine. The apartment was small, containing a living room, a bedroom, a bathroom, and a kitchen. Someone had been sleeping on the living room couch.
When the police entered the apartment, the defendant was standing in the kitchen. Shortly thereafter, Ed Brown entered the apartment. The police found sixteen individually wrapped packages of crack cocaine hidden in Brown's socks. Detective Lewis testified that this amount of crack cocaine and its packaging was indicative of distribution and not personal use.
In the search of the living room, the police found a box of plastic fold-top bags, "diaper bags,"[2] a pink box with more fold-top bags and a spoon, and a notebook that Detective Lewis opined was a "drug ledger." The ledger included a page labeled "Al's contact list," which contained the names and telephone numbers of people whom Detective Lewis recognized as known Framingham drug users and traffickers.[3] ,[4] On the inside cover of the notebook was a list of numbers, "1 equals 40, 2 equals 80, 3 equals 120 ... 25 equals 1000." Detective Lewis noted that these numbers corresponded to the current street prices of crack cocaine in Framingham.[5] The detective also discovered multiple identification cards belonging to individuals whom he knew to be drug users in Framingham. He opined that drug dealers hold onto an identification card as collateral when an individual owes them money.
In the search of the apartment's bedroom, Detective Lewis found a number of bills containing the defendant's name and address at 26 Willis Street, Apartment 34.[6]
1. Ineffective assistance of counsel. To prevail on an ineffective assistance claim, the defendant must demonstrate that the performance of counsel fell below that of an ordinary fallible lawyer, and that such failure "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
The defendant claims that counsel failed to move for a required finding at the close of the Commonwealth's case and that this failure deprived the defendant of an opportunity to argue insufficiency of the evidence before the trial judge. In substance, the defense did move for a required finding. Although not prefaced with the specific words "motion for a required finding of not guilty," counsel argued at the close of the Commonwealth's case that the Commonwealth's evidence was insufficient to support a conviction.
Furthermore, counsel was not ineffective because there was sufficient evidence that the defendant committed the crimes charged. See Commonwealth v. Costa, 407 Mass. 216, 224 & n.9 (1990) (counsel not ineffective in not moving for required finding of not guilty that would have been denied). To sustain a conviction for possession of a class B substance with the intent to distribute, the Commonwealth is required to prove that the defendant (1) knowingly and intentionally possessed the class B illegal substance (i.e., cocaine), and (2) did so with the specific intent to distribute it. Commonwealth v. Acosta, 81 Mass. App. Ct. 836, 839 (2012). "Intent may be inferred from the surrounding facts proved at the trial provided any such inference is reasonable." Ibid., citing Commonwealth v. Gollman, 436 Mass. 111, 116 (2002).
Because the drugs were found on Brown, the Commonwealth sought to prove that the defendant had possession of the cocaine based on theories of joint venture and constructive possession. Joint venture criminal liability "has two essential elements: [1] that the defendant knowingly participated in the commission of the crime charged, and [2] that the defendant had or shared the required criminal intent." Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009). Constructive possession of a controlled substance requires proof that the defendant had knowledge of the location of illegal drugs, plus the ability and intent to exert dominion and control over them. Commonwealth v. Proia, 92 Mass. App. Ct. 824, 830 (2018). In order to prove constructive possession, the Commonwealth must present evidence that establishes a "particular link" between the defendant and the drugs. Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 411 (2013). This link "may be established by circumstantial evidence, and the inferences that can be drawn therefrom." Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989) (quotation omitted). See Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014).
The evidence presented by the Commonwealth was sufficient to show that the defendant, at a minimum, knowingly participated with Brown in selling drugs. The evidence permitted the inference that the defendant and Brown shared a small one-bedroom apartment where drug-trade related paraphernalia was found throughout the common areas. A notebook described by Detective Lewis as a drug ledger contained a list of known Framingham drug users and traffickers, as well as a price list for crack cocaine in Framingham. The ledger did not contain the defendant's contact information, thus permitting the inference that it belonged to him. Brown was found with sixteen individually packaged bags of crack cocaine in his socks. The judge was permitted to draw an inference that "Al" was the defendant, that he kept records of a cocaine sales operation, that Brown was selling crack cocaine he kept in his socks, and that the defendant and Brown were working together with a shared intent to control and distribute crack cocaine from the apartment. See Commonwealth v. Ormond O., 92 Mass. App. Ct. 233, 237 (2017).
The evidence also was sufficient to support a finding of guilt of conspiracy to sell crack cocaine. To sustain a conviction for conspiracy, the Commonwealth must prove that the defendant and at least one other person knowingly joined in an agreement or plan to accomplish some criminal or unlawful purpose. Commonwealth v. Costa, 55 Mass. App. Ct. 901, 901 (2002). "The acts of different persons who are shown to have known each other, or to have been in communication with each other, directed towards the accomplishment of the same object, especially if by the same means or in the same manner, may be satisfactory proof of conspiracy." Commonwealth v. Peck, 86 Mass. App. Ct. 34, 41 (2014) (quotation omitted). The same evidence was sufficient to show that the defendant conspired with Brown to distribute controlled substances. Contrast Commonwealth v. Doty, 88 Mass. App. Ct. 195, 203-204 (2015). The evidence here was indicative of an agreement and organized effort between the defendant and Brown to distribute drugs to others.
Judgments affirmed.

"Diaper bags" are the remnants of plastic bags with the corners cut off. Detective Lewis found these significant because drug distributers often package narcotics in the torn corners of plastic bags.

There was also a page labeled "Jen's contact list," which the judge could infer referred to Brown's girl friend, "Jennifer."

In addition, Brown's Comcast account number and address were found in the notebook.

One bag of crack cocaine cost $40, two bags cost $80, three bags cost $120, and so on.

Two gas bills, a debit card bill, a Verizon bill, and an Elder Services bill.